# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DAWN FROBE and RACHEL WIEST, individually, | ) ) ) | Civil Action No. 2:20-cv-957 |
| Plaintiffs, | ) ) | |
| vs. | ) ) | Filed Electronically |
| UPMC ST. MARGARET, | ) ) ) | Judge Christy Criswell Wiegand Chief Magistrate Judge Cynthia Reed Eddy |
| Defendant. | ) | |

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Christopher K. Ramsey (Pa. 63293)
Lauren E. Marzullo (Pa. 306459)
MORGAN, LEWIS & BOCKIUS LLP
One Oxford Centre, 32nd Floor
Pittsburgh, PA 15219-6401
412-560-3300 (main)
412-560-7001 (fax)
christopher.ramsey@morganlewis.com
lauren.marzullo@morganlewis.com

Mikaela Shaw Masoudpour (IL 6321502)
*Admitted pro hac vice*
MORGAN, LEWIS & BOCKIUS LLP
110 N. Wacker Drive, Suite 2800
Chicago, IL 60606-1511
312-324-1000 (main)
312-324-1001 (fax)
mikaela.masoudpour@morganlewis.com

*Attorneys for Defendant*

# TABLE OF CONTENTS

**Page**

INTRODUCTION ............................................................................................................... 1

BRIEF SUMMARY OF UNDISPUTED MATERIAL FACTS ................................................ 2

ARGUMENT ...................................................................................................................... 5

I.      Legal Standard For Summary Judgment ........................................................... 5

II.     Plaintiffs' Disability Discrimination Claims Fail As A Matter Of Law. ........................... 5

      A.      Plaintiffs' ADA and PHRA disability discrimination claims fail because they were not "disabled." ....................................................................... 6

      B.      Plaintiffs were not "regarded as" disabled. ......................................................... 10

      C.      Even if Plaintiffs were disabled, any reasonable accommodation claim fails. ............................................................................................. 10

      D.      St. Margaret has shown a legitimate, non-discriminatory reason for terminating each Plaintiff's employment, and there is no evidence of pretext. ................................................................................................. 13

III.     Plaintiffs' ADA And PHRA Retaliation Claims Also Fail As A Matter Of Law. .......... 14

IV.     Plaintiffs Cannot Prove Their Claims Of Wrongful Discharge. ....................................... 16

      A.      Neither OSHA complaints nor "safety concerns" can give rise to a wrongful discharge claim under Pennsylvania law. ........................................... 17

      B.      There is no evidence linking Plaintiffs' terminations to their workers' compensation claims. ....................................................................... 18

CONCLUSION .................................................................................................................. 20

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Allen v. SouthCrest Hosp.*,
    455 F. App'x 827 (10th Cir. 2011) ...................................................................7

*Amiot v. Kemper Ins. Co.*,
    122 F. App'x 577 (3d Cir. 2004) ....................................................................8

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986).........................................................................................5

*Brennan v. Cephalon, Inc.*,
    298 F. App'x 147 (3d Cir. 2008) ..................................................................17

*Buskirk v. Apollo Metals*,
    307 F.3d 160 (3d Cir. 2002)...........................................................................12

*Callaghan v. Haverford Twp.*,
    345 F. App'x 767 (3d Cir. 2009) ....................................................................8

*Capps v. Mondelez Glob., LLC*,
    847 F.3d 144 (3d Cir. 2017)...........................................................................14

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986).........................................................................................5

*Christman v. Cigas Machine Shop, Inc.*,
    293 F. Supp. 2d 538 (E.D. Pa. 2013) ............................................................19

*Gaul v. Lucent Techs., Inc.*,
    134 F.3d 576 (3d Cir. 1998)...........................................................................11

*Hohider v. United Parcel Serv., Inc.*,
    574 F.3d 169 (3d Cir. 2009)...........................................................................11

*Horn v. Knight Facilities Mgmt-GM, Inc.*,
    No. 11-13799, 2012 WL 6015890 (E.D. Mich. Dec. 3, 2012) .................8

*Jackson v. Oil-Dri Corp. of Am.*,
    No. 16-189, 2018 WL 1996474 (N.D. Miss. April 27, 2018) .................9

*Keyes v. Catholic Charities of the Archdiocese of Philadelphia*,
    415 F. App'x 405 (3d Cir. 2011) ....................................................................7

*Larochelle v. Wilmac Corp.*,
    210 F. Supp. 3d 658 (E.D. Pa. 2016) ............................................................19

*Lomaskin v. Siemens Med. Sols. USA, Inc.*,
    820 F. App'x 138 (3d Cir. 2020) ....................................................................17

*McLaughlin v. Gastrointestinal Specialists, Inc.*,
    750 A.2d 283 (Pa. 2000) ...........................................................................17, 18

*Mercer v. SEPTA*,
    608 F. App'x 60 (3d Cir. 2015) ....................................................................14

*Moore v. CVS Rx Servs., Inc.*,
    142 F. Supp. 3d, 321, 336 ...........................................................................11

*Oden v. SEPTA*,
    671 F. App'x 859 (3d Cir. 2016) ....................................................................6

*Ortiz v. Delta Dental of Pa.*,
    No. 18-456, 2020 WL 2494681 (M.D. Pa. May 14, 2020)...................11, 14

*Rearick v. Pennsylvania State Univ.*,
    416 F. App'x 223 (3d Cir. 2011) ....................................................................16

*Rinehimer v. Cemcolift, Inc.*,
    292 F.3d 375 (3d Cir. 2002)............................................................................8

*Robinson v. First State Cmty. Action Agency*,
    920 F.3d 182 (3d Cir. 2019)...........................................................................13

*Shiring v. Runyon*,
    90 F.3d 827 (3d Cir. 1996).............................................................................12

*Shklyar v. City of Pittsburgh*,
    No. 18-1588, 2019 WL 6118716 (W.D. Pa. Nov. 18, 2019)..................8, 9

*Stough v. Conductive Techs., Inc.*,
    613 F. App'x 145 (3d Cir. 2015) ....................................................................15

*Svoboda v. TimkenSteel Corp.*,
    No. 18-01443, 2020 WL 1513710 (N.D. Ohio Mar. 30, 2020) ...................9

*Theriault v. Dollar Gen.*,
    336 F. App'x 172 (3d Cir. 2009) ....................................................................19

*Tice v. Centre Area Transp. Auth.*,
    247 F.3d 506 (3d Cir. 2001)..................................................................6, 7, 10

*Tirk v. Dubrook, Inc.*,
    No. 14-889, 2016 WL 427738 (W.D. Pa. Feb. 4, 2016)..............................20

*Tolliver v. Trinity Par. Found.*,
  No. 14-1021, 2017 WL 3288119 (D. Del. Aug. 2, 2017) ....................................................13

*Ward v. Ingersoll-Rand Co.*,
  688 F. App'x 104 (3d Cir. 2017) ...................................................................................19

*Watson v. Drexel Univ.*,
  No. 19-1027, 2020 WL 5763587 (E.D. Pa. Sept. 28, 2020) ...........................................11

*Weber v. Don Longo, Inc.*,
  No. 15-2406, 2018 WL 1135333 (D.N.J. Mar. 2, 2018) ..................................................7, 10

*Whitesell v. FMS Financial Management Services, LLC*,
  No. 18-00496, 2020 WL 2770017 (M.D. Tenn. May 28, 2020) .........................................9

*Wiest v. Tyco Elecs. Corp.*,
  812 F.3d 319 (3d Cir. 2016)..............................................................................................5

*Williams v. Philadelphia Hous. Auth. Police Dep't*,
  380 F.3d 751 (3d Cir. 2004)........................................................................................15, 19

*Yovtcheva v. City of Philadelphia Water Dept.*,
  518 F. App'x 116 (3d Cir. 2013) .....................................................................................12

**Statutes**

42 U.S.C. § 12203(a) ..............................................................................................................15

Americans with Disabilities Act ................................................................................ *passim*

Americans with Disabilities Act Amendments Act of 2008................................6, 7, 8, 9

Pennsylvania General Safety Law ..........................................................................................18

Pennsylvania Human Relations Act............................................................................ *passim*

**Other Authorities**

Fed. R. Civ. P. 56.....................................................................................................................5

https://www.dli.pa.gov/Individuals/Labor-Management-
  Relations/bois/Pages/General-Safety.aspx (last visited June 6, 2022) ....................................18

## INTRODUCTION

Plaintiffs Dawn Frobe and Rachel Wiest are former Environmental Services ("EVS") Associates who provided cleaning services at Defendant UPMC St. Margaret Hospital ("St. Margaret"). Plaintiffs' claims are simple. They allege that St. Margaret violated the Americans with Disabilities Act ("ADA") and Pennsylvania Human Relations Act ("PHRA") when it terminated their employment and purportedly failed to accommodate their sensitivity to a new cleaning product. They also claim wrongful discharge in violation of Pennsylvania public policy based on concerns they raised internally and externally to the Occupational Safety and Health Administration ("OSHA") about that cleaning product and based on their workers' compensation claims due to their sensitivity to the cleaning product.

Although St. Margaret expects Plaintiffs to attempt to muddy the record with numerous immaterial facts and off-base theories, the truly material facts are undisputed, and Plaintiffs' claims fail as a matter of law for multiple straightforward reasons. First, their ADA and PHRA claims fail because their sensitivity to the cleaning product is not a disability. Those claims also would fail even if the sensitivity were a disability because St. Margaret offered Plaintiffs multiple reasonable accommodations, including other positions in other locations, which they rejected. St. Margaret ultimately terminated Plaintiffs' employment for legitimate reasons—Frobe's failure to return to work after she did not qualify for any available leave and Wiest's fraud in connection with her receipt of short-term disability benefits—which were not discriminatory, retaliatory, or pretextual. Second, Plaintiffs' wrongful discharge claims fail because the concerns they raised about the cleaning product cannot give rise to a wrongful discharge claim, and there is not a shred of evidence that their terminations from employment were motivated by their pursuit of workers' compensation claims filed many months earlier. For all of these reasons, St. Margaret is entitled to summary judgment on all of Plaintiffs' claims.

1

## BRIEF SUMMARY OF UNDISPUTED MATERIAL FACTS[1]

In September 2017, St. Margaret was among the last of UPMC's hospitals to transition to a new primary cleaning product known as 3M C. Diff. ("C. Diff." or the "cleaning product"). SUMF ¶¶ 9, 13-14.  This cleaning product was superior to the Oxycide cleaning product previously used for several reasons, including its ability to kill dangerous C. Diff. bacteria, which is very contagious and very common in hospital settings.  *Id.* ¶¶ 8, 10-11.  The new cleaning product had been vetted, tested, and rolled out at many other facilities with no issue.  *Id.* ¶ 12.  In mid-November 2017, Plaintiffs reported to St. Margaret that they each experienced reactions to C. Diff., such as headaches and difficulty breathing.  *Id.* ¶¶ 16-18, 21-22.  St. Margaret sent each of them for medical evaluation, and Plaintiffs' providers restricted them from using or working near the cleaning product.  *Id.* ¶¶ 19-20, 22-23.  St. Margaret's third-party leave, disability, and workers' compensation administrator, WorkPartners, also initiated workers' compensation claims for Plaintiffs at that time.  *Id.* ¶¶ 24-25.  At this time, Plaintiffs also filed the first of a few confidential OSHA complaints.  *Id.* ¶¶ 115-118.

Immediately after Plaintiffs' reports about their reactions, St. Margaret temporarily accommodated them with modified duties in the non-patient care areas in which the cleaning product was not used, but Plaintiffs claimed to experience reactions even when they were not directly using the cleaning product.  *Id.* ¶¶ 4, 15, 26-29.  Plaintiffs complained internally about the cleaning product to their manager and to Human Resources Manager Kristin Beckes, and Frobe complained to St. Margaret President David Patton in December 2017.  *Id.* ¶¶ 7, 39-41.  During this time Beckes and others at St. Margaret and WorkPartners had numerous

---

[1] Pursuant to the Local Rules, each material fact is set forth separately in Defendant's Concise Statement of Undisputed Material Facts ("SUMF") which is filed contemporaneously with this Brief.

communications with Plaintiffs in which they explored other possible accommodations, including reassigning Plaintiffs to work different jobs in areas of the hospital where the cleaning product was not used. *Id.* ¶¶ 31-34. Plaintiffs rejected those proposals. *Id.* ¶¶ 32-33. On January 9, 2018, St. Margaret informed Plaintiffs that it could no longer offer the modified duties, placed them on leave pending the outcome of their workers' compensation claims, and encouraged them to apply for other leave and benefits. *Id.* ¶¶ 46-50. Plaintiffs submitted to Independent Medical Evaluations ("IMEs") which concluded that each Plaintiff could return to work, although Wiest was limited to areas in which C. Diff. was not used because she was pregnant, and this was consistent with her OBGYN's restrictions. *Id.* ¶¶ 52, 54-55.

Plaintiffs each returned to work for one day in March 2018, but each again reported immediate reactions to the cleaning product and each left work. *Id.* ¶ 57. Their physicians restricted them from being in the presence of the cleaning product at work. *Id.* ¶ 58. St. Margaret again directed them to WorkPartners, and Plaintiffs again were encouraged to apply for any available FMLA leave and/or short-term disability benefits. *Id.* ¶ 60. Wiest was approved for FMLA leave and short-term disability pay due to her pregnancy. *Id.* ¶¶ 90-91. On the other hand, Frobe was not eligible for FMLA leave and did not qualify for short-term disability pay. *Id.* ¶¶ 61-63. St. Margaret and WorkPartners also considered whether Frobe might qualify for protected time away from work as an accommodation per UPMC policy and sought records from her and her physicians in connection with that request. *Id.* ¶¶ 65-66. However, WorkPartners determined that the documents submitted did not support the leave request. *Id.* ¶¶ 67-68. Because Frobe could not return to work and was not eligible for any protected leave based on WorkPartners' determinations, St. Margaret ended Frobe's employment on July 3, 2018, and characterized it as a resignation for health reasons which left her eligible for rehire. *Id.* ¶¶ 67-72.

Following the birth of Wiest's child, and additional accommodated leave time, Wiest's doctor cleared her to return to work with no restrictions on August 1, 2018. *Id.* ¶¶ 94-97. She again reported a reaction upon return to work. *Id.* ¶ 97. St. Margaret and WorkPartners again attempted to accommodate her. *Id.* ¶ 98. St. Margaret offered Wiest two different positions that would not require use of or contact with the cleaning product, but Wiest rejected them. *Id.* ¶¶ 99-100. A few weeks later, St. Margaret offered Wiest a position at the UPMC St. Margaret Harmar Outpatient Center, where the cleaning product was not used at the time, as an accommodation. *Id.* ¶ 101. Wiest rejected the position because she believed C. Diff. was used there, but she never discussed with St. Margaret or WorkPartners this mistaken belief. *Id.* ¶ 102.

On October 16, 2018, St. Margaret contacted Frobe and offered her the opportunity to return to St. Margaret as either a Food Service Attendant in the dietary department or an EVS Associate at the Harmar Outpatient Center. *Id.* ¶¶ 74-77. The cleaning product was not used at either location. *Id.* ¶¶ 76-77, 79. Frobe rejected the Harmar position and accepted the dietary position. *Id.* ¶¶ 78, 82. However, on the day that she was supposed to start in the dietary position, she instead began working at an alternative job at a company called Stericycle. *Id.* ¶ 83. Frobe's work locations for Stericycle included other UPMC hospitals cleaned with the cleaning product, but it never caused her to have to stop working. *Id.* ¶ 84.

Meanwhile, as part of her ongoing workers' compensation claim, Wiest produced paystubs showing she had received pay from a new job while she received short-term disability pay from St. Margaret, which she had not reported to WorkPartners as required as a condition of her approval for such benefits. *Id.* ¶¶ 92, 103. St. Margaret's corporate fraud department investigated the issue based on this information and concluded that Wiest engaged in fraud by not reporting the additional income to WorkPartners when she collected the short-term disability

benefits from UPMC. *Id.* ¶ 109. St. Margaret terminated Wiest's employment because of the short-term disability fraud on November 2, 2018. *Id.* ¶ 111. Wiest ultimately agreed to pay back the short-term disability overpayment as part of the settlement of her workers' compensation claim. *Id.* ¶ 113.

Plaintiffs thereafter filed EEOC charges in June 2019 and this action followed. *Id.* ¶ 119. They also filed retaliation claims with OSHA that remain pending.

## ARGUMENT

### I. Legal Standard For Summary Judgment.

Summary judgment should be granted when the movant shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material only if it could affect the outcome of the suit; no genuine dispute exists when a reasonable jury could not return a verdict for the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "The moving party bears the initial burden to identify 'specific portions of the record that establish the absence'" of such a dispute, and then the burden shifts to the nonmoving party to "come forward with specific facts showing that there is a genuine issue for trial." *Wiest v. Tyco Elecs. Corp.*, 812 F.3d 319, 328 (3d Cir. 2016); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A defendant may prevail on summary judgment by showing that the plaintiff's claims lack evidentiary support. *Celotex*, 477 U.S. at 322. "Rule 56(c) mandates the entry of summary judgment…against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.*

### II. Plaintiffs' Disability Discrimination Claims Fail As A Matter Of Law.

To recover on a claim for disability discrimination under the ADA and PHRA, Plaintiffs each must show that she (1) is disabled, (2) is otherwise qualified to perform the essential

functions of the position, with or without accommodation, and (3) suffered an adverse employment action because of her disability. *Tice v. Centre Area Transp. Auth.*, 247 F.3d 506, 512 (3d Cir. 2001).[2]  If Plaintiffs have made out a prima facie case, the burden shifts to Defendant to articulate a non-discriminatory reason for its employment action. *Id.*  Then the burden shifts back to Plaintiffs to prove that Defendant's explanation is pretextual. *Id.*

Here, Plaintiffs' ADA and PHRA claims fail for multiple reasons.  They cannot establish a prima facie case because they were not "disabled" and, therefore, were not protected by the ADA or PHRA.  Nor is there any evidence contrary to the facts that St. Margaret offered Plaintiffs reasonable accommodations, which Plaintiffs rejected, and that all of St. Margaret's actions were based on legitimate non-discriminatory reasons, which were not pretextual.

### A. Plaintiffs' ADA and PHRA disability discrimination claims fail because they were not "disabled."

Under the ADA and PHRA, a "disability" is a physical or mental impairment that "substantially limits" a major life activity.  Here, each Plaintiff's purported "disability" was a sensitivity to one particular cleaning product.  St. Margaret anticipates that Plaintiffs will claim they experienced limitations to the major life activities of working and breathing due to their sensitivity.  But the law is clear that "to show a disability in the major life activity of working, ... [a plaintiff is] required, even after the enactment of the ADAAA[3] and the modified EEOC regulations, to demonstrate that she was substantially limited in performing a class of jobs or

---

[2] *See Oden v. SEPTA*, 671 F. App'x 859, 862 n.4 (3d Cir. 2016) (quoting *Macfarlan v. Ivy Hill SNF, LLC*, 675 F.3d 266, 274 (3d Cir. 2012) (explaining that the ADA and PHRA are "'to be interpreted consistently' and 'have the same standard for determination of liability'")).

[3] On January 1, 2009, the Americans with Disabilities Act Amendments Act of 2008 ("ADAAA") became effective, and it broadened the definition of disability in certain ways.  The PHRA has never been so amended, and the PHRA definition of disability thus remains narrower than the ADA definition.  As explained herein, Plaintiffs' sensitivity does not meet the ADA definition of disability, and it also does not meet the narrower PHRA definition of disability.

broad range of jobs in various classes as compared to most people with comparable training, skills, and abilities." *Allen v. SouthCrest Hosp.*, 455 F. App'x 827, 835 (10th Cir. 2011);[4] *see also Keyes v. Catholic Charities of the Archdiocese of Philadelphia*, 415 F. App'x 405, 410 (3d Cir. 2011) (affirming summary judgment where plaintiff failed to show that his sleep apnea prevented him from performing "a wide range or class of jobs," or that the employer regarded him as such); *Tice,* 247 F.3d at 515 (affirming summary judgment where employee's back injury only prevented him from performing a bus driver job, but not any number of other jobs).

The record is undisputed that Plaintiffs only experienced symptoms when they interacted with the product while ***working*** at St. Margaret as EVS Associates.  SUMF ¶ 30.  Any physical symptoms were directly tied to ***working*** and did not exist when not working.  According to their physicians, they could have performed any number of other non-cleaning jobs at St. Margaret, but they rejected those positions.  *See* SUMF ¶¶ 29-30, 35-36, 44-45, 58, 63-64, 67, 93, 97.  The law is clear that "inability to perform a particular job is not a disability within the meaning of the Act," and thus Plaintiffs' claims fail.  *Tice,* 247 F.3d at 515 (holding that inability to perform bus driver job was not a disability).

Plaintiffs also could have performed any job, including cleaning jobs, at any number of other facilities that did not involve use of the C. Diff. product.  In fact, both Plaintiffs had other

---

[4] As aptly explained by the court in *Weber v. Don Longo, Inc.*, No. 15-2406, 2018 WL 1135333, at *10-11 (D.N.J. Mar. 2, 2018), "'the 'broad class of jobs' restriction remains in place notwithstanding the enactment of the ADAAA and the modified EEOC Regulations.'  In fact, "[i]n its Guidance, the EEOC affirms that part of the doctrine:  'In the rare cases where an individual has a need to demonstrate that an impairment substantially limits him or her in working, the individual can do so by showing that the impairment substantially limits his or her ability to perform a class of jobs or broad range of jobs in various classes as compared to most people having comparable training, skills, and abilities....'"  *Id.* (quoting "Substantially Limited in Working," Appendix to Part 1630 – Interpretive Guidance on Title I of the Americans with Disabilities Act, 29 C.F.R. Pt. 1630, App. (2016)).

jobs during their employment with St. Margaret, including during their leaves of absence in 2018.  SUMF ¶¶ 64, 93.  The law is equally clear that a plaintiff is not disabled under the ADA when he is "***only limited in the specific location of one job*** rather than in the ability to perform a broad class of jobs," as such allegations are "insufficient to establish that he is substantially limited in performing any major life activity, including of working."  *See Amiot v. Kemper Ins. Co.*, 122 F. App'x 577, 580 (3d Cir. 2004) (emphasis added); *see also Callaghan v. Haverford Twp.,* 345 F. App'x 767, 770 (3d Cir. 2009) (plaintiff not disabled under the ADA where he was unable to perform a job within a specific department but could perform a broad range of jobs if transferred to another location or department).

Applying these principles, courts routinely reject claims that sensitivities to workplace substances constitute a disability.  The Third Circuit expressly held that a "condition of being sensitive to dust and fumes [in the workplace], which is not temporary . . . does not 'substantially limit' a 'major life activit[y].'"  *Rinehimer v. Cemcolift, Inc.*, 292 F.3d 375, 381 (3d Cir. 2002). The ADAAA did not alter this analysis, and transient adverse reactions when exposed to a specific noxious irritant in a particular workplace still are not a disability even post-ADAAA. *See, e.g., Horn v. Knight Facilities Mgmt-GM, Inc.*, No. 11-13799, 2012 WL 6015890, at *7 (E.D. Mich. Dec. 3, 2012) (holding that nothing in the ADAAA has changed the general holding that "a transient adverse reaction when exposed to a specific noxious irritant in the workplace is not a disability for purposes of the ADA.").  Many similar post-ADAAA cases have held unequivocally that a transient sensitivity or reaction to a workplace substance is not a disability. In *Shklyar v. City of Pittsburgh*, No. 18-1588, 2019 WL 6118716, at *5 (W.D. Pa. Nov. 18, 2019), for example, a warehouse worker alleged she suffered an allergic reaction to the dust from the warehouse that impaired her breathing.  *Id.*  Her doctor advised she could not continue to

work in the warehouse after her allergic reaction to the dust. *Id.* The court held that the facts pleaded did not "show how her breathing was 'substantially limited,' not just temporarily impaired" and thus she did not establish she had a disability within the meaning of the ADA. *Id.*

Similarly, in *Whitesell v. FMS Financial Management Services, LLC*, No. 18-00496, 2020 WL 2770017, at \*9 (M.D. Tenn. May 28, 2020), the court held that a plaintiff who suffered from smoke, chemical, and fragrance allergies was not disabled, even in light of the ADAAA. First, the court noted that despite the ADAAA's more lenient standard, "not every impairment will constitute a disability within the meaning [of the ADAAA]" and that the ADAAA "left untouched the plaintiff's burden of proof in a disability case; he still has to prove he has a disability." *Id.* The court noted that numerous courts have found that an employee's sensitivity to particular substances was not a disability if the plaintiff was able to work and breathe in the absence of those substances. *Id.* Thus, the court concluded that her condition was transient and did not substantially limit a major life activity. *Id.; see also Svoboda v. TimkenSteel Corp.*, No. 18-01443, 2020 WL 1513710, at \*8 (N.D. Ohio Mar. 30, 2020) ("individuals suffering from respiratory sensitivity to airborne agents cannot show a substantial limitation on the major life activity of breathing within the meaning of the ADA when the agents only exist at his place of work."); *Jackson v. Oil-Dri Corp. of Am.*, No. 16-189, 2018 WL 1996474, at \*6 (N.D. Miss. April 27, 2018) (same).

Here, Plaintiffs testified that they experience symptoms such as throat, eye and sinus irritation, headaches/migraines, dizziness/nausea, back aches, difficulty breathing, blurred vision, and skin rashes. SUMF ¶¶ 18, 22. They admitted that they only experienced these symptoms while working with or around the cleaning product, and for short periods of time thereafter. SUMF ¶ 30. Their transient reactions to a specific cleaning product that existed only at their

workplaces were not "disabilities" under the ADA or the PHRA.

**B.      Plaintiffs were not "regarded as" disabled.**

Plaintiffs also cannot prove that they were "regarded as" disabled.  They claim that the

mere fact that St. Margaret approved their claims for short-term disability evidences that it

regarded them as disabled, Compl. ¶ 160, but the record does not support this assertion.  Rather,

WorkPartners denied Frobe's claim for short-term disability compensation, expressly finding

that she was <u>not</u> disabled, and it granted Wiest's short-term disability claim based on her

pregnancy, not her reaction to C. Diff.  SUMF ¶¶ 51, 62-63, 91.  There is no evidence that

anyone at St. Margaret believed that Plaintiffs' sensitivity to the cleaning product was a

disability covered by the ADA.  To the contrary, according to Plaintiffs' own testimony,

management did not believe they were suffering a reaction and that they could fully perform

their EVS Associate responsibilities.  SUMF ¶¶ 42-43.  Plaintiffs cannot establish that St.

Margaret regarded them as disabled on these facts.  *See also Weber*, 2018 WL 1135333, at *13

(granting summary judgment on "regarded as" claim where the plaintiff "presented no evidence

to dispute that [the defendant] saw him as having a temporary, non-severe injury without

permanent or long-term impact.").  Accordingly, because Plaintiffs cannot prove they were

disabled or regarded as disabled, their disability discrimination and failure to accommodate

claims fail.  *See Tice,* 247 F.3d at 515; *see also infra* at 13.

**C.      Even if Plaintiffs were disabled, any reasonable accommodation claim fails.**

Although Plaintiffs did not plead a separate action for failure to accommodate, they

allege in the Complaint that they sought and were denied relocation to a different facility as an

accommodation.  SUMF ¶ 59.  An employee can demonstrate that an employer breached its duty

to provide reasonable accommodations by showing that: "1) the employer knew about the

employee's disability; 2) the employee requested accommodations or assistance for his or her

disability; 3) the employer did not make a good faith effort to assist the employee in seeking accommodations; and 4) the employee could have been reasonably accommodated but for the employer's lack of good faith." *Hohider v. United Parcel Serv., Inc.*, 574 F.3d 169, 187-88 (3d Cir. 2009). This possible claim fails for several reasons.

First, St. Margaret made numerous attempts to offer Plaintiffs other work, including permanent jobs at another facility in which C. Diff. was not used. Plaintiffs rejected the jobs, which is fatal to any accommodation claim. The record is clear that St. Margaret in fact did offer both Frobe and Wiest positions at the UPMC St. Margaret Harmar outpatient facility located only a few miles from St. Margaret Hospital, where the cleaning product was not used, when such positions became available. SUMF ¶¶ 77, 101. Plaintiffs rejected these positions. SUMF ¶¶ 78, 102. Where it is undisputed that an employer offered reasonable accommodations that the employee rejected, summary judgment is appropriate. *See, e.g., Ortiz v. Delta Dental of Pa.*, No. 18-456, 2020 WL 2494681, at *7 (M.D. Pa. May 14, 2020) (granting summary judgment because "the evidence shows that Delta engaged in the interactive process in good faith and offered Ortiz multiple reasonable options to meet the needs of her request"); *Watson v. Drexel Univ.*, No. 19-1027, 2020 WL 5763587, at *5 (E.D. Pa. Sept. 28, 2020) (granting summary judgment and holding the employer appropriately engaged in the interactive process to assist an employee where it encouraged her to apply for FMLA leave, approved all leave requests for which there was supporting documentation, and only denied leave requests that were not supported by documentation). In addition, to prevail on a failure to accommodate claim based on reassignment, it is Plaintiffs' burden to prove that there was a vacant position available. *Gaul v. Lucent Techs., Inc.*, 134 F.3d 576, 580 (3d Cir. 1998); *Moore v. CVS Rx Servs., Inc.*, 142 F. Supp. 3d, 321, 336 (holding that reassignment must involve a position that is "open at the time of

the request or 'within a reasonable amount of time' after the request.") (citing 29 C.F.R. § 1630, App. § 1630.2(o)).  Plaintiffs cannot point to any open position they were denied.

Second, any failure to accommodate claim also would fail because St. Margaret offered both Plaintiffs numerous other accommodations that were reasonable and consistent with the restrictions from their physicians.  St. Margaret temporarily accommodated Plaintiffs with modified duties in which they did not use the cleaning product that was used throughout most of the hospital.  SUMF ¶¶ 26-28.  Although this accommodation ended because the absence of two full-time EVS Associates from their normal duties caused the EVS Department to struggle to maintain the cleanliness and sanitization of the hospital, SUMF ¶ 47, the law is clear that St. Margaret was not required to offer this work on a permanent basis because "the ADA does not require an employer to create a new position to accommodate an employee with a disability ... [n]or is an employer required to transform a temporary light duty position into a permanent position." *Buskirk v. Apollo Metals*, 307 F.3d 160, 169 (3d Cir. 2002); *see also Shiring v. Runyon*, 90 F.3d 827, 831 (3d Cir. 1996) ("It follows that the district court did not err in refusing to consider the non-existent position ... as an accommodation that would make [plaintiff] qualified.").  While Plaintiffs temporarily performed modified work, St. Margaret further attempted to accommodate Plaintiffs by offering them other permanent positions within St. Margaret with minimal contact with the cleaning product, which Plaintiffs rejected, and by encouraging them to apply for other leave and benefits if they qualified.  *See supra* at 2-4.  To the extent that Plaintiffs desired other accommodations, "[a]n employer is not obligated to provide an employee the accommodation he requests or prefers, the employer need only provide some reasonable accommodation." *Yovtcheva v. City of Philadelphia Water Dept.*, 518 F. App'x 116, 122 (3d Cir. 2013).

Lastly, Plaintiffs cannot make a failure to accommodate claim because, as established above, they were not disabled.  *Robinson v. First State Cmty. Action Agency*, 920 F.3d 182, 186 (3d Cir. 2019) ("[A]n individual who . . . fails to demonstrate that she is actually disabled[] is not entitled to a reasonable accommodation."); *supra* at 6-10.  Their failure to accommodate claims therefore fail as a matter of law for all of these reasons.

### D.    St. Margaret has shown a legitimate, non-discriminatory reason for terminating each Plaintiff's employment, and there is no evidence of pretext.

St. Margaret also is entitled to summary judgment on Plaintiffs' disability discrimination claims, even if Plaintiffs were disabled, which they were not, because it has shown legitimate non-discriminatory reasons for terminating each Plaintiff's employment, and there is no evidence of pretext.  As to Frobe, it is undisputed that WorkPartners determined that Frobe did not qualify for any protected leave or accommodation based on the information provided in connection with requests for such leave.  SUMF ¶¶ 61-63, 65-69, 71.  Frobe admitted that at the time of her termination, she was ineligible for any protected leave.  *Id.* ¶ 70.  No member of St. Margaret management told Frobe that her termination was due to any disability, *id.* ¶ 73, and there is not a shred of evidence in the record supporting such an inference.  Summary judgment should therefore be granted.  *See, e.g., Tolliver v. Trinity Par. Found.*, No. 14-1021, 2017 WL 3288119, at *9 (D. Del. Aug. 2, 2017) (granting summary judgment because "the evidence indicates that when [plaintiff]'s authorized medical leave ended . . . she failed to return to work, failed to provide any medical documentation to support continued medical leave, and . . . [there was] [n]othing before the Court that contradicts the proffered reasons for [plaintiff]'s termination.").  There is also no record evidence showing "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions" in St. Margaret's termination reason from which a reasonable fact finder could find it "unworthy of credence" and hence that St. Margaret "did not act for the

asserted non-discriminatory reasons." *Mercer v. SEPTA*, 608 F. App'x 60, 65 (3d Cir. 2015) (quoting *Fuentes v. Perskie*, 32 F.3d 759, 765 (3d Cir. 1994)).

Wiest also lacks evidence that St. Margaret terminated her due to her alleged disability. It is undisputed that she received compensation from another employer during the time period she received short-term disability payments from St. Margaret and that she did not report them as required in her approval notice.  SUMF ¶¶ 92, 103-109.  Wiest agreed to repay St. Margaret as part of her workers' compensation settlement. *Id.* ¶ 113.  Wiest claims that she called and attempted to report the income to WorkPartners on multiple occasions, but no one answered. *Id.* ¶ 110.  But those calls are immaterial, as there is no record evidence that any of the decisionmakers were aware of those calls or otherwise acted with discriminatory intent when they concluded that Wiest engaged in short-term disability fraud. *See, e.g., Mercer*, 608 F. App'x at 65 (affirming summary judgment because plaintiff did not demonstrate defendant's "proffered reason for terminating him—his VMIS violations—were tainted with discriminatory intent, nor has he shown that they were weak, implausible, inconsistent, incoherent, or contradictory"); *Capps v. Mondelez Glob., LLC*, 847 F.3d 144, 154 (3d Cir. 2017) (affirming summary judgment on retaliation claim based on employer's "honest belief that [employee] misused his FMLA leave and was otherwise dishonest in violation of [employer's] policies"); *Ortiz*, 2020 WL 2494681, at *4 (granting summary judgment where employer terminated plaintiff for FMLA misuse and plaintiff presented no evidence of pretext, but rather at best showed the decision was wrong, which cannot defeat summary judgment).

## III.    Plaintiffs' ADA And PHRA Retaliation Claims Also Fail As A Matter Of Law.

Aside from their terminations, Plaintiffs also vaguely allege that St. Margaret retaliated against them for complaining to Human Resources and St. Margaret's President about perceived retaliation they experienced after seeking reasonable accommodations for their alleged disability.

Compl. ¶¶ 177-179.  They claim the following allegedly retaliatory conduct: (1) changing the terms of the dietary position offered to Frobe, (2) encouraging Frobe's next employer to terminate her employment; and (3) threatening legal action against Wiest regarding her short-term disability fraud.[5]  Compl. ¶¶ 184-193.  This claim fails as well because Plaintiffs adduced no evidence supporting this claim.

The ADA retaliation provision, 42 U.S.C. § 12203(a), states that "[n]o person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by [the ADA] or because such individual made a charge ... under [the ADA]." *Id.*  Frobe claims to have engaged in such opposition when she complained to HR and to St. Margaret's President in December 2017.  SUMF ¶¶ 39-40.  Wiest appears to claim she engaged in such opposition when she complained to HR around November 2017 regarding an interaction with an EVS Team Lead.  *Id.* ¶ 37.

As to Frobe, there is no evidence that her complaints—made nearly a year earlier when she reported to a different EVS Director—had anything to do with the terms of the dietary position offered in November 2018 or with the new EVS director's communication with Stericycle in December 2018.  *See* SUMF ¶¶ 5-6, 80-81, 85-89.  There is similarly no evidence that Wiest's complaint—also made a year earlier—had anything to do with the decision to terminate her employment for short-term disability fraud.  Summary judgment is warranted due to this absence of a causal connection.  *See Williams v. Philadelphia Hous. Auth. Police Dep't,*

---

[5] In the event that Plaintiffs now attempt to point to other conduct they claim was retaliatory, any such conduct that occurred prior to August 11, 2018 (Frobe) and August 14, 2018 (Wiest) are time-barred, as they occurred more than 300 days before Plaintiffs filed their June 7, 2019 and June 10, 2019 EEOC charges.  *See Stough v. Conductive Techs., Inc.*, 613 F. App'x 145, 148 (3d Cir. 2015) (affirming dismissal of time-barred demotion and failure to promote claims that occurred before the 300-day period during which to file a charge with the EEOC).

380 F.3d 751, 760 (3d Cir. 2004) (affirming summary judgment on ADA retaliation claim where two months passed between the accommodation request and the alleged retaliatory termination, and there was no evidence the termination was because of the accommodation request); *Rearick v. Pennsylvania State Univ.*, 416 F. App'x 223, 225 (3d Cir. 2011) (affirming summary judgment on retaliation claim because plaintiff offered "nothing more than [her] own speculation supporting her allegation that retaliatory animus was a factor in [adverse action]").

Nor can Frobe prove that any adverse action sufficient to give rise to an ADA retaliation claim occurred.  The undisputed record evidence rather shows that the schedule for the dietary department generally is not fixed and rotates, and it was not changed for Frobe.  SUMF ¶ 80.  Moreover, Frobe accepted the position with the schedule and compensation as described in the offer and follow-up communications.  *See* SUMF ¶¶ 80-82.  Similarly, Frobe's allegation that St. Margaret encouraged Stericycle to terminate her employment also is unsupported.  To the contrary, the Stericycle representative unequivocally denied that any such communication occurred, and in any event Frobe's Stericycle employment was unaffected.  *Id.* ¶¶ 87-89.  Frobe's retaliation claim fails for this reason as well.

Additionally, there is no evidence that anyone at St. Margaret actually threatened legal action against Wiest regarding the short-term disability fraud.  Plaintiff appears to be referring to an internal email in which a St. Margaret lawyer simply asked whether St. Margaret intended to prosecute (*see* SUMF ¶ 112), but there is no evidence any threat was ever made to Wiest.  Also, St. Margaret did not file any criminal charges against Wiest notwithstanding her fraud.  *Id.*

## IV.    Plaintiffs Cannot Prove Their Claims Of Wrongful Discharge.

Plaintiffs also allege a claim for wrongful discharge based on public policy based on two purported "protected activities" by Plaintiffs:  submitting internal and external safety complaints about the C. Diff. cleaning product and filing workers' compensation claims.  Compl. ¶¶ 130,

16

147.  This claim also fails because neither an external OSHA complaint nor an internal safety concern can support a wrongful discharge claim under Pennsylvania law, nor is there any evidence that St. Margaret discharged Plaintiffs because of any alleged protected activity.

> **A.    Neither OSHA complaints nor "safety concerns" can give rise to a wrongful discharge claim under Pennsylvania law.**

Pennsylvania law has an "extremely strong" presumption that all non-contractual employment relationships are at-will, and courts have recognized very limited exceptions only when a termination violated a "clear mandate" of Pennsylvania's public policy.  *McLaughlin v. Gastrointestinal Specialists, Inc.*, 750 A.2d 283, 286–87 (Pa. 2000).  A wrongful discharge claim exists only when plaintiffs can demonstrate a "'clear public policy articulated in the constitution, in legislation, an administrative regulation, or a judicial decision' that [defendant] violated in terminating her."  *Lomaskin v. Siemens Med. Sols. USA, Inc.*, 820 F. App'x 138, 141 (3d Cir. 2020) (quoting *Hunger v. Grand Cent. Sanitation*, 447 Pa. Super. 575, 670 A.2d 173, 175 (1996)).  Pennsylvania courts generally limit application of public policy exceptions to situations where an employer: (1) requires an employee to commit a crime; (2) prevents an employee from complying with a statutorily imposed duty; or (3) discharges an employee when specifically prohibited from doing so by statute.  *Brennan v. Cephalon, Inc.*, 298 F. App'x 147, 150 (3d Cir. 2008) (citing *Hennessy v. Santiago*, 708 A.2d 1269, 1273 (Pa. Super. Ct. 1998)).

Where no statute prohibits an employer from terminating employees for non-discriminatory reasons, a wrongful discharge claim fails.  *See Brennan*, 298 F. App'x at 150 (affirming summary judgment where no statute existed that prohibited employer's termination of the plaintiff).  Moreover, the statute must be a *state statute*, and external federal OSHA complaints—such as those made by Plaintiffs—are the type of "bald reference[s] to a violation of a federal regulation" that are "insufficient to overcome" the at-will employment presumption, at

17

least "without any more articulation of how the public policy of [Pennsylvania] is implicated." *McLaughlin*, 750 A.2d at 290. Indeed, the Pennsylvania Supreme Court squarely has held that reporting concerns to OSHA does not give rise to a wrongful discharge claim under Pennsylvania law. *Id.*

Rather, Plaintiffs must tie their complaints and concerns to a "state statute or court decision that would be implicated, undermined, or violated because of" the defendant's alleged conduct. *Id.* Plaintiffs attempt to argue that they were reporting concerns under Pennsylvania's General Safety Law (*see* Compl. ¶¶ 134-50), but the OSH Act preempts the General Safety Law for private sector employees, and it therefore does not apply to St. Margaret. *See* https://www.dli.pa.gov/Individuals/Labor-Management-Relations/bois/Pages/General-Safety.aspx (last visited June 6, 2022) ("The General Safety Law and the regulations promulgated thereunder are preempted by the Federal OSHA regulations for private sector employees, and therefore, only apply to public sector employees."). As such, the General Safety Law in no way is implicated, undermined, or violated as a result of St. Margaret's conduct. Even if the law applied here—which it does not—the General Safety Law does not contain an anti-retaliation prohibition on terminating employees for making safety complaints, and Plaintiffs' wrongful discharge claim would fail for this reason as well. If Plaintiffs wish to allege unlawful termination because of their OSHA complaints, they are able to assert such claims before OSHA, as they already have done in a separate, still pending, OSHA retaliation complaint. Their attempt to make duplicative claims here under Pennsylvania law fails.

### B.   There is no evidence linking Plaintiffs' terminations to their workers' compensation claims.

In addition, Plaintiffs cannot establish a prima facie case of wrongful discharge for filing workers' compensation claims. Plaintiffs must prove that: (1) they engaged in a protected

activity, (2) they were discharged either after or contemporaneous with the protected activity, and (3) there is a causal connection between the two. *See Theriault v. Dollar Gen.*, 336 F. App'x 172, 175 (3d Cir. 2009).  If Plaintiffs meet their burden, then the burden shifts to St. Margaret to articulate a legitimate, nondiscriminatory reason for its actions. *Id.* Once done, the burden shifts back to Plaintiffs to prove by a preponderance of the evidence that the legitimate reasons articulated by St. Margaret are pretextual. *Id.*

Plaintiffs cannot prove a prima facie case because they cannot demonstrate a causal link between their workers' compensation claims and their discharges.  Pennsylvania law is clear that "the mere fact that an alleged discharge occurs subsequent to the filing of a claim is insufficient to satisfy the plaintiff's burden of demonstrating a causal link between the two events." *Larochelle v. Wilmac Corp.*, 210 F. Supp. 3d 658, 715 (E.D. Pa. 2016) (quoting *Christman v. Cigas Machine Shop, Inc.*, 293 F. Supp. 2d 538, 544 (E.D. Pa. 2013)).  Rather, "if both a significant amount of time has elapsed and the plaintiff does not offer any other evidence supporting a causal link, he has not established the causation element of his prima facie case" and summary judgment should be granted. *Christman*, 293 F. Supp. 2d at 544 (quoting *Sharkey v. Fed. Express Corp.*, No. 98-3351, 2000 WL 230330, at *6 (E.D. Pa. Feb. 29, 2000) (granting summary judgment where three months passed between workers' compensation claim and termination, and there was no other evidence of causation)).  The Third Circuit has made clear that where more than two months passed between the claim and the discharge, timing alone is insufficient to meet Plaintiffs' burden. *Ward v. Ingersoll-Rand Co.*, 688 F. App'x 104, 111 (3d Cir. 2017); *Williams v. Phila. Hous. Auth. Police Dep't*, 380 F.3d 751, 760 (3d Cir. 2004).

St. Margaret initially directed Plaintiffs to contact WorkPartners in November 2017, and they initiated workers' compensation claims on November 14 and 15, 2017. *See* SUMF ¶ 25.

St. Margaret thereafter accommodated Plaintiffs with modified duties for months, attempted to find Plaintiffs new positions with "extremely limited exposure" to the cleaning product (all of which Plaintiffs rejected), and encouraged Plaintiffs to apply for available leaves and benefits in January 2018 when it declined to permanently assign them modified duties, including FMLA leave, short-term disability benefits, and unemployment benefits.  *Id.* ¶¶ 26-34, 49.  It was not until seven months after Plaintiffs first initiated their workers' compensation claims that St. Margaret terminated Frobe's employment, and a year had passed by the time St. Margaret terminated Wiest's employment.  *Id.* ¶¶ 71, 111.  These long time periods cannot alone give rise to an inference of causation, and there is no record evidence that otherwise supports an inference that Plaintiffs were discharged because of their workers' compensation claims.  To the contrary, Plaintiffs admit that St. Margaret never mentioned their workers' compensation claims to them in connection with their terminations.  SUMF ¶¶ 73, 114.  Plaintiffs' workers' compensation wrongful discharge claim fails.

Lastly, even if Plaintiffs could prove a prima facie case—which they cannot—their claims nonetheless fail because St. Margaret has set forth legitimate reasons for Plaintiffs' discharges, and there is no evidence showing pretext.  *See supra* at 13-15; *see also Tirk v. Dubrook, Inc.*, No. 14-889, 2016 WL 427738, at *7 (W.D. Pa. Feb. 4, 2016), *aff'd*, 673 F. App'x 238 (3d Cir. 2016) (granting summary judgment as to retaliatory discharge for filing a workers' compensation claim where the record was "devoid of any evidence of antagonism, retaliatory animosity, or any other actions that might support an inference of retaliation").

## **CONCLUSION**

For all the reasons set forth above, St. Margaret respectfully requests the Court grant Defendant's Motion for Summary Judgment and dismiss Plaintiffs' Complaint in its entirety.

June 7, 2022                                    Respectfully submitted,

                                               _/s/ Christopher K. Ramsey_____
                                               Christopher K. Ramsey (Pa. 63293)
                                               Lauren E. Marzullo (Pa. 306459)
                                               MORGAN, LEWIS & BOCKIUS LLP
                                               One Oxford Centre, 32nd Floor
                                               Pittsburgh, PA 15219-6401
                                               412-560-3300 (main)
                                               412-560-7001 (fax)
                                               christopher.ramsey@morganlewis.com
                                               lauren.marzullo@morganlewis.com

                                               Mikaela Shaw Masoudpour (IL 6321502)
                                               *Admitted pro hac vice*
                                               MORGAN, LEWIS & BOCKIUS LLP
                                               110 N. Wacker Drive, Suite 2800
                                               Chicago, IL 60606-1511
                                               312-324-1000 (main)
                                               312-324-1001 (fax)
                                               mikaela.masoudpour@morganlewis.com

                                               *Attorneys for Defendant*