IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

DAWN FROBE, RACHEL WIEST,

Plaintiffs,

v.

UPMC ST. MARGARET,

Defendant.

2:20-CV-00957-CCW

## OPINION AND ORDER

In this case, Plaintiffs Dawn Frobe and Rachel Wiest bring claims against Defendant UPMC St. Margaret ("St. Margaret") under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq.*, Pennsylvania Human Relations Act ("PHRA"), 43 P.S. § 951, *et seq.*, and Pennsylvania common law. The claims arise from Plaintiffs' past employment with St. Margaret, where they worked as housekeepers and were exposed to a cleaning agent, 3M C. Diff., causing various alleged symptoms. In brief, Plaintiffs contend that their reactions to C. Diff. qualify as a protected disability which St. Margaret failed to reasonably accommodate, that St. Margaret retaliated against Plaintiffs and terminated them because of their disabilities, and that St. Margaret wrongfully terminated their employment for seeking workers' compensation benefits. Before the Court are twelve motions in limine (seven filed by Plaintiffs and five filed by St. Margaret), which the Court will resolve as follows.

## I.      Legal Standard

A court's authority to rule on motions in limine comes from its inherent authority to manage trials proceedings before it, not from the Federal Rules of Evidence. *Luce v. United States*, 469 U.S. 38, 41 n.4 (1984). Consistent with that authority, a court may screen irrelevant or otherwise improper evidence, thereby "narrow[ing] the evidentiary issues for trial and . . .

eliminat[ing] unnecessary trial interruptions." *Bradley v. Pittsburgh Bd. of Educ.*, 913 F.2d 1064, 1069 (3d Cir. 1990);  *United States v. Romano*, 849 F.2d 812, 815 (3d Cir. 1988) ("A trial judge has a duty to limit the jury's exposure to only that which is probative and relevant and must attempt to screen from the jury any proffer that it deems irrelevant.").  That said, a "trial court should exclude evidence on a motion in limine only when the evidence is clearly inadmissible on all potential grounds." *Johnstown Heart & Vascular Ctr., Inc. v. AVR Mgmt., LLC*, 2019 WL 3573663, at *3 (W.D. Pa. Aug. 6, 2019) (Gibson, J.) (internal citation omitted).

Here, the parties' motions in limine implicate Federal Rules of Evidence 402 and 403, among others.  Rule 402 establishes the cornerstone rule that only relevant evidence is potentially admissible; irrelevant evidence, in contrast, is always inadmissible.  Evidence is relevant if it tends to make a fact of consequence to the action more or less probable.  Fed. R. Evid. 401.  Though potentially admissible, relevant evidence may nevertheless be excluded by the Constitution, a federal statute, caselaw, or another of the Federal Rules of Evidence.  *See* Fed. R. Evid. 402.  One such rule is Rule 403.  It allows a court to exclude relevant evidence "if its probative value is substantially outweighed by a danger of one or more of the following:  unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."  Fed. R. Evid. 403.  Unfair prejudice is evidence with an "undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one."  *Pirl v. Sergeant*, 619 F. Supp. 3d 531, 537 (W.D. Pa. 2022) (Gibson, J.) (internal quotation marks omitted).  The decision to exclude evidence under Rule 403 falls within the trial court's discretion. *See Abrams v. Lightolier Inc.*, 50 F.3d 1204, 1213 (3d Cir. 1995).

II.     **The *Daubert* Motions (ECF Nos. 117, 133)**

The parties have filed dueling motions under Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals., Inc.*, 509 U.S. 579 (1993), to preclude certain expert opinions. Defendants move to exclude all opinions offered by Plaintiffs' expert Dr. Ernest Chiodo, who would opine regarding the cause of Plaintiffs' symptoms and St. Margaret's efforts at accommodation.  ECF No. 133.  Plaintiffs, in turn, move to exclude the opinions Jason T. Capriotti, who St. Margaret would offer to rebut the opinions of Dr. Chiodo.  ECF No. 117.  The Court will grant in part and deny in part St. Margaret's Motion and will deny Plaintiffs' Motion in its entirety.

A.      **Applicable Law**

Under Rule 702, a witness "qualified as an expert by knowledge, skill experience, training, or education" may offer their expert opinion on a matter if:  (a) their expertise would "help the trier of fact to understand the evidence or . . . determine a fact in issue";  (b) the opinion "is based on sufficient facts or data";  (c) the opinion "is the product of reliable principles and methods"; and (d) those principles and methods have been "reliably applied . . . to the facts of the case." Consistent with Rule 702, *Daubert* teaches that district courts have a "'gatekeeping' obligation to [e]nsure that only reliable and relevant expert testimony be presented to jurors." *Tyger v. Precision Drilling Corp.*, 832 F. App'x 108, 112 (3d Cir. 2020) (quoting *Daubert*, 509 U.S. at 597).  In discharging this obligation, the court "must ensure that expert testimony satisfies a 'trilogy of restrictions':  qualification, reliability, and fit." *Id.* (quoting *Schneider v. Fried*, 320 F.3d 396, 404 (3d Cir. 2003)).   Ultimately, "[t]he overriding consideration with regard to these three requirements is that expert testimony should be admitted if it will assist the trier of fact. *Id.* (citing *United States v. Velasquez*, 64 F.3d 844, 850 (3d Cir. 1995)).

3

B.   **The Court Will Grant in Part and Deny in Part St. Margaret's *Daubert* Motion (ECF No. 133)**

St. Margaret argues that Dr. Chiodo's opinions are alternatively unsupported, unreliable, irrelevant, and touch on improper subject matter.  It specifically objects to:  (1) Dr. Chiodo's opinion that C. Diff. "can cause" symptoms like Plaintiffs';  (2) his opinion that potential accommodations of Plaintiffs' alleged disabilities were "reasonable accommodations";  (3) his opinions regarding the use of personal protective equipment ("PPE") and reassignment;  and (4) his opinions regarding St. Margaret's alleged failure to utilize both an industrial hygienist and occupational medical doctor in considering Plaintiffs' alleged disabilities.  Plaintiffs respond that each of these opinions is proper.  The Court will consider each in turn.

*First*, the Court rejects St. Margaret's objection to Dr. Chiodo's purported "can cause" opinion.  St. Margaret's argument is that an opinion about what "*can* cause" symptoms like Plaintiffs' is unhelpful to the jury because it does not contest the nature of their symptoms, is insufficiently definite, and is speculative.  This argument takes Dr. Chiodo out of context.  Dr. Chiodo's opinion is that "the cause of the symptoms of Dawn Frobe and Rachel Wiest were [sic] exposure to [C. Diff.] . . . at St. Margaret."  ECF No. 134-2 at 5.  That C. Diff. "can cause" symptoms like Plaintiffs' is merely a premise upon which Dr. Chiodo based his conclusion, using an accepted process of differential diagnosis.  *See* ECF No. 146 at 4 n.2;  *Heller v. Shaw Indus., Inc.*, 167 F.3d 146, 156 (3d Cir. 1999).  That premise is supported by at least some of the peer-reviewed articles referenced by Dr. Chiodo, and his knowledge as a trained doctor.  *See, e.g.*, ECF No. 134-6 at 3 ("Sodium  dichloroisocyanurate [i.e., C. Diff.] . . . . is moderately irritating to the eyes, upper respiratory tract and moist or abraded skin.");  ECF No. 134-5;  *see also In re Asbestos Prod. Liab. Litig.*, No. 10-CV-61118, 2011 WL 605801, at *5 (E.D. Pa. Feb. 16, 2011) (arguments regarding fit between articles and facts of case were "more appropriate for cross examination at

4

trial"). And the ultimate opinion is helpful to the jury and sufficiently definite because it goes to Plaintiffs' own asserted disabilities—their reactions to C. Diff.—and informs the jury's analysis of potential accommodations. St. Margaret may not contest the existence of Plaintiffs' symptoms, but that concession does not moot Dr. Chiodo's ultimate opinion, which goes to the *cause* of those symptoms.

**Second**, the Court agrees with St. Margaret that Dr. Chiodo may not opine that certain accommodations qualify as "reasonable accommodations." *See* ECF No. 146-2 at 9–10. Whether something is a "reasonable accommodation" is an "ultimate issue" to be decided by the jury. *See Hohider v. United Parcel Serv., Inc.*, 574 F.3d 169, 186 (3d Cir. 2009). Although opinions that "embrace[] an ultimate issue" are not per se objectionable, Fed. R. Evid. 704(a), an opinion that "articulates and applies the relevant law . . . circumvents the jury's decision-making function by telling it how to decide the case." *Orner v. Nat'l Beef Packaging Co., LLC*, No. 4:13-CV-0837, 2015 WL 8334544, at *7 (M.D. Pa. Dec. 9, 2015) (quoting *Specht v. Jensen*, 853 F.2d 805, 808 (10th Cir. 1988)). Thus, the Court will exclude Dr. Chiodo's opinions to the extent that he opines that an accommodation is a "reasonable accommodation" because such an opinion effectively tells the jury how to decide this case. *See id.* at *8 (precluding testimony regarding whether a given accommodation was reasonable); *Donelson v. Providence Health & Servs.-Washington*, 823 F. Supp. 2d 1179, 1193 (E.D. Wash. 2011) (same). This ruling, however, does not prevent Dr. Chiodo from presenting other elements of his opinions that do not articulate and apply the "reasonable accommodation" standard, such as whether a particular accommodation would have "allowed Plaintiffs to safely and comfortably work [at St. Margaret]." ECF No. 146-2 at 9; *see Orner*, 2015 WL 8334544, at *9 (allowing testimony regarding the factual considerations that would inform whether an accommodation was reasonable).

*Third*, the Court rejects St. Margaret's argument that Dr. Chiodo's opinions regarding PPE and reassignment should be excluded because he contradicted those opinion at his deposition. Though there is some tension between Dr. Chiodo's report and his testimony, St. Margaret's argument ultimately goes to Dr. Chiodo's credibility and thus it is for the jury to consider. *See TQ Delta, LLC v. 2Wire, Inc.*, No. 13-CV-1835-RGA, 2021 WL 2685654, at *3 (D. Del. June 30, 2021) ("Defendant alleges that [the expert's] deposition testimony at times contradicts opinions provided in his expert report and at other times evades subject matter opined upon in his report. These questions go to witness credibility . . . ."); *Buddy's Plant Plus Corp. v. CentiMark Corp.*, 978 F. Supp. 2d 523, 533 (W.D. Pa. 2013), *aff'd*, 604 F. App'x 134 (3d Cir. 2015) ("That [the expert] . . . allegedly contradicted himself in his expert report and deposition affects the weight and credibility of [the expert's] testimony, and not to his qualifications or methods used to support his opinion."); *see generally Lugo v. Farmer's Pride Inc.*, No. CIV.A. 07-0749, 2011 WL 2550376, at *3 (E.D. Pa. June 23, 2011) ("Admissibility of an expert's opinion is a question properly before the court, whereas the weight and credibility of the expert's opinion are questions for the jury to resolve.").

*Fourth*, the Court will reject St. Margaret's argument that the Court should exclude any opinion regarding the use (or lack thereof) of an industrial hygienist and occupational medical doctor in considering accommodations for Plaintiffs.[1] On this front, Dr. Chiodo intends to opine that "St. Margaret failed to involve personnel with the proper qualifications needed to identify proper reasonable accommodations . . . that would have allowed Plaintiffs to comfortably and

---

[1] As a part of its fourth argument, St. Margaret contends that the court should preclude Dr. Chiodo from opining as to ventilation as a potential accommodation because it is outside the scope of his report. ECF No. 134 at 5. Although ventilation as an accommodation appears to be within the scope of Dr. Chiodo's report, *see* ECF No. 146-2 at 10, the Court has already ruled that a change in ventilation "is not a reasonable accommodation." ECF No. 91 at 18–19 (Report and Recommendation); ECF No. 96 (adopting Report and Recommendation). Thus, Dr. Chiodo may not offer an opinion regarding ventilation as a possible accommodation.

safely work in the [St. Margaret] facility" because it did not use a certified industrial hygienist with a physician in occupational medicine.  ECF No. 146-2 at 9.  Dr. Chiodo testified, for example, that the industrial hygienist and occupational medical doctor should have worked in conjunction to determine a safe location for Plaintiffs to work within St. Margaret.  ECF No. 146-3 at 94:3–25.

Neither of St. Margaret's arguments persuade the Court.  St. Margaret first argues that the opinion is factually unsupported because St. Margaret *did* rely on an industrial hygienist and occupational medical doctor in connection with Plaintiffs' complaints regarding C. Diff.  That may be so, *see* ECF Nos. 70-25, 72-5, but it is unclear whether those professionals were engaged to evaluate alternative placements for Plaintiffs, as Dr. Chiodo opined that they should have been.  *See, e.g.*, ECF No. 70-25 (suggesting that the industrial hygienist's scope of work was limited to an examination of Plaintiffs' existing housekeeping duties, not alternative placements).  Thus, the Court cannot accept St. Margaret's argument that Dr. Chiodo's opinion is so factually unsupported to be precluded at this stage. *See Walker v. Gordon*, 46 F. App'x 691, 695–96 (3d Cir. 2002) ("An expert is . . . permitted to base his opinion on a particular version of disputed facts and the weight to be accorded to that opinion is for the jury.  It is also, as the District Court observed, a proper subject for cross-examination.").

Otherwise, St. Margaret argues that Dr. Chiodo's opinion is legally unsupported because "[t]he law simply does not require any specific suitability analysis by any specific type of expert." ECF No. 134 at 5.  To justify excluding Dr. Chiodo's opinion in its entirety, St. Margaret cites only a case holding that "the fact that [a d]efendant[] did not include [a p]laintiff in discussions of his evaluation process alone is not enough to support a finding of bad faith in the interactive process." *Kling v. Univ. of Pittsburgh Med. Ctr.*, No. 2:18-CV-01368-MJH, 2021 WL 2882442, at *4 (W.D. Pa. July 9, 2021) (Horan, J.).  That holding, however, does not suggest that evidence

about what a defendant could or should have done to determine the suitability of a given accommodation is wholly irrelevant. Though its probative value may be limited, such evidence—which the jury is free to reject—may help it understand St. Margaret's options in evaluating the suitability of potential accommodations.[2]

In sum, the Court will preclude Dr. Chiodo from opining that certain accommodations were "reasonable accommodations," but will otherwise deny St. Margaret's *Daubert* Motion.

### C.    The Court Will Deny Plaintiffs' *Daubert* Motion (ECF No. 117)

Plaintiffs argue that Mr. Capriotti, St. Margaret's rebuttal expert, (1) is not a doctor and is therefore unqualified to opine on the suitability of potential accommodations for Plaintiffs' C. Diff. sensitivity or whether they are disabled and (2) improperly relied on a report by Comprehensive Industrial Hygiene Services, Inc. ("CIH") in rendering his opinion, such that his opinion is unreliable. ECF No. 131 at 3, 5. St. Margaret responds that Mr. Capriotti need not be a doctor to

---

[2] In its brief, St. Margaret separately argues that Dr. Chiodo's opinion regarding the use of an industrial hygienist and occupational medicine doctor should be excluded because it is outside the scope of his expert report. *See* Fed. R. Civ. P. 26(a)(2)(B)(i) (requiring expert's report contain "complete statement of all opinions the witness will express and the basis and reasons for them"). "[C]ourts within the Third Circuit have held that experts may testify as to matters outside the report if that information was within the scope of the report, and does not present unfair surprise to the objecting party. One such scenario is where that information was presented to the opposing party during deposition." *Bizich v. Festival Fun Parks, LLC*, No. CIV.A. 11-861, 2013 WL 3279558, at *4 (W.D. Pa. June 27, 2013) (Bissoon, J.) (internal citation omitted). Here, Dr. Chiodo's purported opinion regarding the use of an industrial hygienist and occupational medicine doctor was the subject of lengthy portions of his deposition, which took place on April 20, 2022. *See* ECF No. 134-1 at 92:5–96:25. Thus, there is no real risk of unfair surprise. Reviewing Dr. Chiodo's pre-deposition reports and his deposition testimony, his purported opinion regarding the use of an industrial hygienist and occupational medicine doctor is best understood as a "reasonable . . . elaboration of the opinions" regarding possible accommodations such that it is within the scope of the report. *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 585 F. Supp. 2d 568, 581 (D. Del. 2008); *nCube Corp. v. SeaChange Int'l, Inc.*, 809 F. Supp. 337, 347 (D. Del. 2011) ("A key consideration when determining whether testimony is beyond the scope of an expert report is whether the objecting party had notice of the subject matter of the testimony based on the contents of the report and elaborations made during any deposition testimony."). Given that Dr. Chiodo testified to the subject matter and then filed an April 6, 2023 supplement expressly encompassing the testimony (which St. Margaret did not move to strike or otherwise reference in its Motion), the Court perceives no significant risk of prejudice to St. Margaret from allowing Dr. Chiodo's testimony on this subject matter. *See Bowersfield v. Suzuki Motor Corp.*, 151 F. Supp. 2d 625, 632 (E.D. Pa. 2001) (allowing testimony outside of report).

be qualified to opine on the matters he intends to cover and that he properly relied on the CIH report.  ECF No. 155.  The Court agrees with St. Margaret on both fronts.

*First*, Mr. Capriotti is qualified to testify to the opinion set forth in his report:  "that Dr. Chiodo's statement that accommodations with [PPE] such as specialized masks or respirators could have been made to the plaintiffs is unsupported by his Report and cannot be made by a [certified industrial hygienist] without strict and careful consideration of [certain] factors" set forth in Mr. Capriotti's own report.  ECF No. 131-1 at 7.  That opinion is not a "medical opinion" and thus Plaintiffs' argument that Mr. Capriotti is unqualified to render a "medical opinion" misses the mark.  ECF No. 131 at 3.  Mr. Capriotti has twenty-five years' experience as an industrial hygienist and has worked for NASA and OSHA, among other entities, including in roles specifically focused on respiratory protection.  ECF No. 131-1 at 1.  He is thus qualified to opine on the proper methodologies for determining the appropriateness of specialized masks or respirators.

*Second*, Mr. Capriotti appropriately relied on the CIH report.  In the report, certified industrial hygienist Michele E. Slinkard described C. Diff. exposure monitoring that CIH conducted to determine that adipic acid (a component of the C. Diff. tablets used at St. Margaret) levels in housekeepers' breathing zones were below certain detection and threshold levels in areas of St. Margaret where C. Diff. was mixed and used.  ECF No. 131-2 at 1–2.  Without citing authority, Plaintiffs argue that Mr. Capriotti's "reliance on the CIH report is inappropriate, as the exposure monitoring did not involve Plaintiffs nor [did it] reasonably model Plaintiffs' exposure," such that his report is unreliable.  ECF No. 131 at 5.  That, however, is for the jury to decide.  *See Kannankeril v. Terminix Int'l, Inc.*, 128 F.3d 802, 809 (3d Cir. 1997) ("The issue whether an ambient air test should be given more weight than pesticide application records goes to the weight rather than the admissibility of evidence.  The trial judge must be careful not to mistake credibility

questions for admissibility questions." (internal citation omitted)).  Although Plaintiffs are free to cross-examine Mr. Capriotti regarding these perceived deficiencies, the CIH report is an adequate factual basis for Mr. Capriotti's opinions because it helps to show the potential exposure levels in areas of the hospital where C. Diff. was being used.

The Court will therefore deny Plaintiffs' *Daubert* Motion, ECF No. 117.

## III.    Plaintiffs' Workers' Compensation and Benefits Motions (ECF Nos. 119, 121, 125)

Three of Plaintiffs' Motions cover evidence related workers' compensation, leave, and other benefits requested and/or obtained by Plaintiffs in connection with their alleged disabilities. In the first, Plaintiffs ask the Court to prevent St. Margaret from introducing evidence of the outcomes of Plaintiffs' workers' compensation claims.  ECF No. 119.  In the second, Plaintiffs similarly ask the Court to prevent St. Margaret from introducing evidence that Plaintiffs received unemployment compensation benefits.  ECF No. 121.  And in the third, Plaintiffs ask the Court to prevent St. Margaret from introducing evidence regarding the outcomes of a broader category of leave and benefits requests, "including . . . short-term disability, FMLA, and ADA accommodated leave."  ECF No. 125 at 1.  The Court will grant these motions in part and deny them in part.

### A.    The Court Will Grant in Part and Deny in Part Plaintiffs' Motion Regarding the Outcomes of Workers' Compensation Claims (ECF No. 119)

Plaintiffs acknowledge that the fact that they *made* workers' compensation claims is relevant to their wrongful termination claim but argue that evidence regarding the *outcomes* of those workers' compensation claims is irrelevant and, alternatively, would be unfairly prejudicial or would confuse the jury.  In particular, Plaintiffs seek to exclude evidence regarding a workers' compensation settlement between Ms. Wiest and St. Margaret and evidence regarding the amounts both Plaintiffs received in workers' compensation.  St. Margaret responds that the fact of Ms. Wiest's settlement must be admitted because, as a part of that settlement Ms. Wiest agreed to

resign her employment, which is relevant to her theory of constructive discharge. As to the amount of workers' compensation received by both Plaintiffs, St. Margaret argues that it is relevant as a collateral benefit that must be deducted from any award of back pay.

Initially, the Court will allow St. Margaret to present evidence to establish the fact that Ms. Wiest entered into a negotiated agreement with St. Margaret by which her termination was amended to a resignation. Under Federal Rule of Evidence 408, evidence of a settlement may not be used to "prove or disprove the validity or amount of a disputed claim," although such evidence may be used for another purpose. St. Margaret has identified such a purpose—it would use evidence of Ms. Wiest's settlement to provide necessary context for Ms. Wiest's claim of constructive discharge. Without evidence showing that St. Margaret and Ms. Wiest reached a negotiated resolution that caused her termination to be changed to a resignation, the jury would be left without an explanation for that decision—a conspicuous gap in the evidence likely to cause significant confusion. Thus, St. Margaret will be allowed to present evidence to fill that gap. However, because St. Margaret conceded at the Final Pretrial Conference that it need not use the settlement agreement itself to do so, the Court will preclude that document.

As to the amount of workers' compensation received, the Court will deny the Motion without prejudice. Although such evidence is relevant to the issue of back pay, the parties have agreed to a bifurcated trial in which front and back pay will be tried before the Court, and have agreed to meet and confer to make any stipulations regarding amounts paid to Plaintiffs. *See Spencer v. Wal-Mart Stores, Inc.*, 469 F.3d 311, 315 (3d Cir. 2006) (back pay is an equitable remedy for the court to decide); *See Russell v. Bd. of Pub. Educ. of Sch. Dist. of Pittsburgh*, No. 02:06-CV-01668, 2009 WL 689058, at *2 (W.D. Pa. Mar. 11, 2009) (McVerry, J.) (court may

deduct workers' compensation payments made by an employer when calculating back pay).[3]  After meeting and conferring, the parties shall submit a joint status report setting forth any stipulations and any remaining disputes regarding the admissibility of evidence regarding the amounts of workers' compensation received.

In sum, the Court will allow St. Margaret to present evidence to establish the fact that it reached a negotiated resolution with Ms. Wiest to amend her termination to a resignation, without presenting the settlement agreement itself.  The parties shall meet and confer regarding the presentation of that evidence and evidence regarding the amounts of workers' compensation, as set forth more fully below.

### B.    The Court Will Deny Plaintiffs' Motion to Preclude Evidence Regarding Unemployment Compensation (ECF No. 121)

Plaintiffs next and similarly move to exclude evidence of unemployment compensation payments made to Plaintiffs, arguing that such payments are irrelevant and unfairly prejudicial. As to relevance, Plaintiffs argue that "[u]nemployment compensation is a collateral source and should not be considered when determining damages."  ECF No. 122 at 2 (citing *Shaffer v. Cranberry Township*, No. 2:19-cv-1481, 2022 U.S. Dist. LEXIS 106495, at *21 (W.D. Pa. Jun. 15, 2022)).  They further argue that the evidence would be unfairly prejudicial because the jury might lessen their damages inappropriately, believing that Plaintiffs have received compensation elsewhere.  Defendants agree that unemployment compensation is a collateral source but argue that an exception to the general rule applies, and that a limiting instruction would cure any potential prejudice.

---

[3] Plaintiffs "do[] not concede" that Ms. Frobe's award of workers' compensation should be used to offset any award of back pay, but have offered no argument or authority for why workers' compensation would be a "collateral source" and thus inappropriate for an offset.  ECF No. 120 at 4.  Thus, the Court will accept, for the purposes of ruling on this Motion, St. Margaret's position.  This does not, however, preclude Plaintiffs from making the contrary argument—with citation to authority—at the appropriate time.  Nor does the Court's ruling resolve the issue of whether or to what extent the amounts reflected in Ms. Wiest's settlement are workers' compensation payments.

The Court agrees with St. Margaret that an exception to the collateral source rule may be applicable.  "[T]he Third Circuit has recognized that testimony of a collateral source may be permitted when offered to directly contradict a statement made by a plaintiff in court."  *Coney v. NPR, Inc.*, No. CIV.A.03-1324, 2006 WL 2583581, at *2 (E.D. Pa. Aug. 31, 2006).  Thus, depending on Plaintiffs' testimony at trial, St. Margaret would be able to introduce evidence regarding Plaintiffs' receipt of unemployment benefits if it "directly contradict[s]" Plaintiffs' testimony.  *Id.*  Until Plaintiffs have testified, the Court cannot determine whether the exception applies and cannot determine the probative value the evidence of unemployment benefits would have in order to conduct the balancing called for by Rule 403.  The Court will therefore deny Plaintiffs' Motion, ECF No. 121, as premature.

### C.    The Court Will Deny Plaintiffs' Motion to Preclude Other Evidence Regarding Benefits and Leave (ECF No. 125)

Finally, Plaintiffs move to prevent St. Margaret from presenting evidence of a broader category of "outcomes and/or determinations of any requests for leave or benefits made by Plaintiffs with respect to their employment with St. Margaret," referring to certain unspecified requests for short-term disability benefits and leave under the FMLA and ADA.  ECF No. 125-1.[4] Plaintiffs argue that this evidence is irrelevant and should be excluded under Rule 403 as unfairly prejudicial because the jury might rely on evidence of a denial of benefits to improperly conclude that Plaintiffs are not disabled.  St. Margaret responds that the evidence is relevant and that its probative value is not substantially outweighed by the danger of unfair prejudice or confusion.

---

[4] Plaintiffs also reference workers' compensation and unemployment compensation in the Motion, raising arguments that duplicate those in its Motions filed at ECF Nos. 119 and 121.  The Court has already resolved those arguments and will not repeat its ruling here.  *See supra* at 10–12.  Finally, Plaintiffs suggest a hearsay objection to the introduction of certain materials relied on by St. Margaret in rendering its leave or benefits decisions.  However, Plaintiffs have not identified those materials and so the Court cannot rule on any hearsay objection.  Plaintiffs are free to raise their objection at the appropriate time during trial.

The Court will not exclude the evidence at issue at this juncture.  Initially, the Court finds that the evidence meets the low bar for relevance.  The evidence provides context for the parties' actions in this case and, further, tends to show that St. Margaret made efforts to direct Plaintiffs to avenues for leave and other benefits and granted Plaintiffs' requests in certain circumstances, which goes to whether St. Margaret attempted to accommodate Plaintiffs or intentionally retaliated against them.  And although there is some risk that a jury could rely on evidence of the denial of benefits or leave to conclude that Plaintiffs were not in fact disabled, a few factors mitigate the potential prejudice.  For one thing, at least some of the denials were predicated on Plaintiffs' failure to provide certain paperwork—an issue that has no bearing on the validity of their asserted disabilities.  For another, the Court is confident that a limiting instruction will ensure that the jury does not rely on the evidence for an improper purpose—the fact that St. Margaret denied a given request is unlikely to be unfairly prejudicial when the entire theory of Plaintiffs' case is that St. Margaret discriminated against them due to their disability.  Thus, at least as presently presented, the Court cannot find that the risk of unfair prejudice "substantially outweighs" the evidence's probative value and the Court will deny Plaintiffs' Motion regarding certain benefit and leave requests, ECF No. 125.

## IV.    Motions Concerning OSHA and Other Safety Complaints (ECF Nos. 127, 139, 141)

The parties dispute whether and to what extent certain evidence regarding complaints made by Plaintiffs to OSHA regarding C. Diff. should be admitted at trial.  St. Margaret argues that all such evidence is irrelevant or should be excluded under Rule 403.  Plaintiffs argue that the only OSHA-related evidence that should be excluded pertains to Plaintiffs' complaints to OSHA of retaliation.  At the outset, the Court notes that although Plaintiffs' current federal case included claims for wrongful termination predicated on their making workplace safety complaints, those

14

claims have since been dismissed,[5] such that the OSHA evidence is only admissible if it is relevant to Plaintiffs' remaining claims of disability discrimination and retaliation under the ADA and PHRA. With that qualification in mind, the Court will grant all of the OSHA motions and preclude evidence regarding OSHA complaints and investigations.

A.      **The Court Will Grant St. Margaret's Motions to Preclude OSHA Evidence (ECF Nos. 139, 141)**

In its two Motions to exclude evidence pertaining to Plaintiffs' OSHA complaints, St. Margaret asks the Court to exclude:  (1) Plaintiffs' complaints to OSHA in November 2017, January 2018, and August 2018, and St. Margaret's responses to OSHA, *see* ECF No. 80-78, ECF Nos. 152-1, 152-2, 152-3;  (2) the Citation and Notification of Penalty issued March 15, 2018, in connection with those complaints, ECF No. 80-86;  and (3) the Informal Settlement Agreement dated April 3, 2018, amending the March 15th Citation, ECF No. 80-77. Generally, these materials reflect Plaintiffs' complaints to OSHA regarding the use of C. Diff. at St. Margaret, OSHA's purported finding that two "serious" violations occurred with regard to training employees to use C. Diff, and that OSHA and St. Margaret reached an agreement to downgrade one of those violations to "other-than-serious" after an informal conference.

---

[5] In ruling on St. Margaret's motion for summary judgment, the Court adopted Magistrate Judge Cynthia Reed Eddy's Report and Recommendation and ordered that "St. Margaret's Motion is **GRANTED** with respect to Plaintiffs' wrongful discharge claim, to the extent that it is based on filing an OSHA complaint, and is **DENIED** in all other respects." ECF No. 96. Plaintiffs attempt to work around the order by arguing that it did not result in the dismissal of their wrongful termination claim to the extent that it is based on St. Margaret's alleged violations of Pennsylvania's General Safety Law ("GSL"), 43 P.S. § 25-1, *et seq.* ECF No. 153 at 1–2. That argument fails. The R&R, expressly noted that Plaintiffs "anchor[ed]" their OSHA wrongful termination claim to the GSL in an effort to establish an element of their claim: that their termination violated, undermined, or at least implicated *Pennsylvania* (as opposed to *federal*) public policy. ECF No 91 at 31. The R&R then rejected that attempted anchoring, concluding that it was insufficient to support Plaintiffs' claim. *Id.* at 31–32. Thus, the R&R's rejection of Plaintiffs' OSHA wrongful termination claim necessarily included a rejection of any such claim predicated on the GSL, and the Court's Order adopting the R&R prevents Plaintiffs from pursuing any such claim at trial. To reiterate—though the R&R and this Court's Order adopting it are already clear—the only theory of wrongful termination available to Plaintiffs at trial is one predicated on Plaintiffs filing workers' compensation claims. *See id.* at 30–31.

St. Margaret argues that this evidence is irrelevant to Plaintiffs' remaining claims and should be excluded under Rule 403 due to a risk of confusing the issues and because the jury may "ascribe undue weigh to OSHA's contentions." ECF No. 140 at 4. Plaintiffs respond that the evidence is relevant to their ADA and PHRA claims because it demonstrates the "conditions which are likely to trigger Plaintiffs' disabilities and the circumstances of their exposures" and Plaintiffs' "repeated efforts to yield cooperation from St. Margaret in the interactive process." ECF No. 152 at 3–4. They argue further that the probative value of the OSHA evidence on these points is not substantially outweighed by the risk of confusion or unfair prejudice.

The Court will exclude the materials under Rule 403. The probative value of these documents is limited because Plaintiffs may describe through their own testimony the circumstances of their exposure to C. Diff., such that the complaints, Citation, and Informal Settlement add little for the jury's consideration. As for the interactive process, the probative value of this evidence is likewise limited because the OSHA investigation of anonymous complaints says little about St. Margaret's efforts to accommodate Plaintiffs. On the other hand, if the Court allowed the jury to hear the OSHA evidence at issue, it could lead to a "mini-trial on the OSHA charges[, which] would certainly distract and confuse the jury from the main issues in this trial, and the danger of such confusion far outweighs any probative value that the OSHA charges may have in this case." *United States v. Pitt-DesMoines, Inc.*, No. 96 CR 513, 1997 WL 525372, at *1 (N.D. Ill. July 31, 1997). The Court further concludes that the Citation and Informal Settlement should be excluded as unfairly prejudicial because the probative value of those documents is substantially outweighed by the risk that the jury "would ascribe unfair weight to the citation [and resulting settlement] because of its 'governmental' source." *Vice v. N. Telecom, Inc.*, No. CIV. A.

16

94-1235, 1996 WL 507340, at *2 (E.D. La. Sept. 6, 1996) (excluding OSHA citation).[6] The Court finds that a limiting instruction would not cure these issues.

The Court, accordingly, will grant St. Margaret's Motions, ECF Nos. 139, 141, and exclude evidence pertaining to November 2017, January 2018, and August 2018 Complaints and St. Margaret's responses, the March 15, 2018 Citation, and the April 3, 2018 Informal Settlement.[7]

**B.      The Court Will Grant as Unopposed Plaintiffs' Motion to Preclude Evidence Regarding OSHA Retaliation Complaints (ECF No. 127)**

St. Margaret's opposition to Plaintiffs' motion to exclude evidence regarding Plaintiffs' complaints of retaliation to OSHA was contingent on the Court concluding that some or all of the Plaintiffs' OSHA complaints, the Citation, and the Informal Settlement could be introduced at trial. Because the Court has ruled that it will exclude that evidence, it will grant Plaintiffs' Motion, ECF No. 127, as unopposed.

**V.      Mr. Frobe's Bankruptcy and Related Issues (ECF Nos. 123, 137)**

Two of the pending Motions pertain, at least in part, to evidence regarding the bankruptcy Ms. Frobe's husband, Joshua Frobe, and the threat of foreclosure on the Frobes' home (which is in Mr. Frobe's name). St. Margaret, in its Motion, would have the Court preclude any evidence pertaining to the bankruptcy and the foreclosure, full stop. ECF No. 136. Plaintiffs, in their Motion, would limit the evidence that St. Margaret could introduce regarding Mr. Frobe's financial circumstances. ECF No. 123. In the same Motion, Plaintiffs separately seek to preclude certain

---

[6] Because the Court is excluding the Citation and Informal Settlement under Rule 403, it need not address St. Margaret's argument that those materials are inadmissible under the hearsay rules. *See* ECF No. 140 at 5.

[7] In its Motions, St. Margaret refers at times to "safety complaints" without limiting its discussion to OSHA-specific complaints. *See, e.g.*, ECF No. 142 at 5, It has not, however, identified particular pieces of evidence that it seeks to preclude aside from the OSHA Complaints, Citation, and Informal Settlement. To be clear, the Court's ruling on these Motions is limited to those documents, not "safety complaints" more generally. The Court will consider objections to other documents or testimony regarding safety complaints if and when they are raised.

unrelated evidence about an unnamed family member of Ms. Frobe. *Id.* The Court will grant in part and deny in part St. Margaret's Motion and will deny Plaintiffs' Motion.

> **A.**   **The Court Will Grant in Part and Deny in Part St. Margaret's Motion to Preclude Evidence of Mr. Frobe's Bankruptcy and the Frobes' Near-Foreclosure (ECF No. 137)**

St. Margaret argues that evidence regarding Mr. Frobe's bankruptcy proceedings and the possibility of foreclosure on the Frobes' home is irrelevant because Mr. Frobe is not a party to this action and should be excluded under Rule 403 due to a risk a confusion, unnecessary delay, and unfair prejudice. Plaintiffs respond that the evidence is relevant to Ms. Frobe's claim for emotional distress damages and that its probative value is not substantially outweighed by the risks articulated by St. Margaret. The Court will exclude evidence of Mr. Frobe's bankruptcy but not the near-foreclosure.

As to relevance, the Court agrees with Plaintiffs that evidence of financial stress may be relevant to an award of emotional distress damages. *See Ridley v. Costco Wholesale Corp.*, 217 F. App'x 130, 136–37 (3d Cir. 2007) (upholding award of emotional distress damages based in part on testimony regarding financial stress). And although Ms. Frobe was not a party to the bankruptcy and the Frobes' home is not in her name, the Court cannot say that these issues are wholly irrelevant, given that they implicate the Frobes' household finances generally. The bankruptcy and the potential foreclosure tend to show the financial stress that Ms. Frobe was under, which she claims was due to her constructive termination by St. Margaret. Evidence on those subjects is therefore relevant.

Nevertheless, the Court agrees that evidence regarding to Mr. Frobe's bankruptcy should be excluded under Rule 403. The probative value of evidence of Mr. Frobe's bankruptcy is limited, given Ms. Frobe's concession that she "does not intend to introduce the totality of the bankruptcy as an item of loss" and instead intends to offer the evidence only to "provide[] a basis for Ms.

Frobe's testimony that she was not only harmed economically but also personally."  ECF No. 150 at 3.  On the other hand, introducing evidence regarding the bankruptcy would open the door to a mini-trial on the bankruptcy, within Plaintiffs' own trial for disability discrimination and wrongful termination, creating substantial risks of wasted time and confusion of the issues.  That risk substantially outweighs the limited probative value of the bankruptcy evidence.  Thus, the Court will grant St. Margaret's Motion and preclude any references to Mr. Frobe's bankruptcy proceedings.  The Court notes, though, that this ruling does not preclude Plaintiffs from otherwise testifying regarding the Frobes' household finances outside of the context of the bankruptcy.

However, the Court reaches a different conclusion regarding evidence about the potential foreclosure on the Frobes' home.  Here, the risk of confusion or wasted time is relatively limited because the evidence does not implicate the legal complexities of a bankruptcy proceeding—a jury can be reasonably expected to understand the threat of losing a home for nonpayment.  As to the risk of unfair prejudice, St. Margaret argues that evidence regarding foreclosure might cause the jury to render a verdict based on sympathy, not the merits.  The Court is unpersuaded that foreclosure evidence would significantly heighten this risk, given that the jury will already be hearing evidence regarding the financial hardship that Ms. Frobe allegedly suffered when she lost her job with St. Margaret.  The Court therefore finds that any risks stemming from evidence regarding the potential foreclosure on the Frobes' home do not substantially outweigh the probative value of that evidence as it relates to Ms. Frobe's claim for emotional distress damages.

### B.  The Court Will Grant in Part and Deny in Part Plaintiffs' Motion to Limit Evidence Pertinent to Ms. Frobe's Asserted Emotional Distress (ECF No. 123)

In their related Motion, Plaintiffs move to exclude certain details regarding Mr. Frobe's financial difficulties and, separately, to preclude evidence regarding an unspecified family member's criminal history and substance abuse.  Plaintiffs argue that both categories of evidence

are irrelevant and should otherwise be excluded under Rule 403.  St. Margaret argues that both categories of evidence are relevant to the cause of Ms. Frobe's asserted emotional distress and that the probative value of the evidence outweighs any of the risks that Plaintiffs assert.

Beginning with evidence of Mr. Frobe's finances, the Court will allow St. Margaret to present such evidence, with certain limitations.  By claiming emotional distress damages, Ms. Frobe "place[d] her condition state at issue" such that St. Margaret "has an interest in introducing evidence of other possible causes of [the claimed] emotional distress." *Hanna v. Giant Eagle Inc.*, No. 15-1009, 2018 WL 11474894, at *2 (W.D. Pa. Mar. 28, 2018).  Thus, evidence that *Mr.* Frobe's financial difficulties contributed (in whole or in part) to the Frobes' near foreclosure is relevant because it tends to show an alternative cause of *Ms.* Frobe's claimed damages.  *See id.* As to the balancing called for in Rule 403, this evidence generally has the potential to be highly probative and that probative value is not substantially outweighed by the risks of unfair prejudice, wasted time, and issue confusion referenced by Plaintiffs in their Motion.

Turning to the second issue, the Court agrees that St. Margaret may present evidence of the unspecified family member's substance abuse and criminal history.  Such evidence is similarly relevant to the cause of Ms. Frobe's damages because it tends to show that other factors besides her loss of employment caused her emotional distress.  *See id.*; *cf. Blakey v. Cont'l Airlines*, No. 93-2194, 1997 WL 1524797, at *12–13 (D. N.J. Sept. 9, 1997) (evidence of plaintiff's affair admissible in her sexual harassment case as evidence of an alternative stressor).  Nor does the Court agree that this evidence carries a such significant risk of unfair prejudice that it should be excluded under Rule 403.  Plaintiffs argue that Ms. Frobe will be deemed guilty by association with the family member and that the jury will accordingly rule against her. ECF No. 124 at 2.  The Court disagrees and is confident that a properly instructed jury will not hold the actions of a non-

party against Ms. Frobe even if they are her family member.  *Cf. United v. Rodriguez*, 961 F.2d 1089, 1095–96 (3d Cir. 1992) (upholding court's decision to overrule Rule 403 objection to evidence of defendant's own criminal history where defendant opened the door to that evidence).

## VI.    The Court Will Grant in Part and Deny in Part St. Margaret's Motion to Exclude Hearsay (ECF No. 135)

St. Margaret moves to preclude several pieces of testimony as hearsay or speculation.  First, St. Margaret argues that Ms. Frobe may not testify that colleagues told her that St. Margaret was "trying to kill you [i.e., Ms. Frobe]" in connection with the use of C. Diff.  ECF No. 136 at 2. Second, St. Margaret argues that Ms. Frobe may not testify that her St. Margaret manager, Doug Hastings, contacted her manager at Stericycle, Sheila Meder, to "interfere" with Ms. Frobe's employment with Stericycle.  *Id.* at 1.  Third, St. Margaret argues that Ms. Frobe may not testify that a doctor suggested that she wear "some type of mask that has a fan or something in it."  *Id.* Finally, St. Margaret argues that the Court should prevent Plaintiffs' from introducing certain excerpts from Ms. Meder's deposition.  Taking these categories in turn, the Court will grant the Motion as to the first and third categories, deny as premature the Motion as to the second category, and deny the motion as to the fourth category.

Hearsay—an out of court statement presented for the truth of the mater asserted—is generally inadmissible.  Fed. R. Evid. 801(c), 802.  An out of court statement is not hearsay if presented for some purpose other than to establish the truth of the matter asserted.  *See id.*  Under Rule 801(d)(2)(D), a statement offered against an opposing party is not hearsay if it was "was made by the party's agent or employee on a matter within the scope of that relationship and while it existed."  Even if a statement satisfies the standard hearsay definition, an exception to the hearsay rule may render it admissible.  *See generally* Fed. R. Evid. 803, 804.

*First*, the Court will exclude the two statements that St. Margaret was trying to "kill" Ms. Frobe.  In the first, Ms. Frobe would testify that Michael Hampton, a manager or transportation director, pulled Ms. Frobe into his office and said, "She is trying to kill you," referring to either Ms. Frobe's team lead, Mirka Moreno, or a St. Margaret Human Resources Manager, Kristin Beckes.  ECF No. 148-1 at 87:15–88:5.  In the second, Ms. Frobe would testify that Andrew Borish, another colleague, told Ms. Frobe that "they [St. Margaret] are trying to kill you, or get you to quit."  *Id.* at 84:24–85:2.  Ms. Frobe argues that both statements are not hearsay because they will not be offered for their truth—i.e., that St. Margaret was literally trying to kill Ms. Frobe or get her to quit—but instead as evidence of motive and opportunity with respect to St. Margaret's alleged retaliation.  She argues, alternatively, that the statements are admissible as statements by a party opponent or under the present sense impression exception.

Ultimately, the Court finds it unnecessary to resolve the hearsay-specific objections to these two statements because it agrees with St. Margaret that the probative value of these statements is substantially outweighed by the risk of unfair prejudice.  *See* ECF No. 136 at 3 (arguing that these statements "could unfairly prejudice the jury against" St. Margaret).  Mr. Hampton and Mr. Borish were not decisionmakers with respect to the alleged discriminatory actions at issue and there is no indication that they had any direct insight into those actions;  the probative value of their observations regarding St. Margaret's motive or opportunity for retaliation is therefore minimal if it exists at all.  On the other hand, this sort of inflammatory language carries with it a risk of unfairly prejudicing St. Margaret by provoking an emotional response from the jury.[8]

---

[8] To the extent that Plaintiffs intend to present Mr. Borish's statement that St. Margaret was trying to "get [Ms. Frobe] to quit" without presenting the preceding language about trying to "kill" Ms. Frobe, St. Margaret's effort to preclude that evidence would be premature because the record is too incomplete to determine whether that evidence would rest on improper speculation or whether a particular hearsay exception applies.

***Second***, the Court concludes that it is too soon to determine whether Ms. Frobe may testify to the content of Mr. Hasting's telephone call with Ms. Meder, during which Ms. Frobe says that Mr. Hastings tried to get Ms. Frobe fired at Stericycle. St. Margaret's Motion does not identify the precise out of court statement that it seeks to preclude, making the hearsay analysis difficult at this point. As to its argument that Ms. Frobe's testimony on the subject would be speculative, a ruling before Plaintiffs have had an opportunity to lay an appropriate foundation would be premature. *See United Fabrics Int'l, Inc. v. Urb. Outfitters, Inc.*, No. CV 10-7895-CBM, 2012 WL 13006025, at *2 (C.D. Cal. July 30, 2012) ("The Court cannot determine whether the testimony of any of Defendants' witnesses will be speculative or lack foundation at this time.").

***Third***, the Court will preclude Ms. Frobe from testifying that an unidentified doctor suggested that she use "some type of mask that has a fan or something in it." ECF No. 136 at 1. She argues that this statement is admissible under Rule 803(4) as a statement "made for—and . . . reasonably pertinent to—medical diagnosis or treatment" and for a non-hearsay purpose. Initially, the statement is not admissible under Rule 803(4) because it was made, if at all, by a doctor treating Ms. Frobe, not Ms. Frobe herself. *See Plunkard v. Marks*, No. 1:18-CV-01536, 2021 WL 8013872, at *7 (M.D. Pa. May 4, 2021) ("[T]his exception to the rule against hearsay only applies to a patient's statement made to a medical professional, rather than a medical professional's statement to a patient.") (collecting cases). As to Ms. Frobe's non-hearsay purpose, she would offer it as evidence of her understanding of her medical directive. Plaintiffs have not identified any authority in support of that argument, however, and that purpose is indistinguishable as a practical matter from offering the testimony to prove that her doctor in fact recommended a "mask that has a fan or something in it."

**Fourth**, the Court will not preclude the designated deposition testimony of Ms. Meder.  St. Margaret lodges two objections to Plaintiffs' designations.  First, it objects to Ms. Meder's testimony at pages 34:23–35:3 as hearsay and speculation.  *See* ECF No. 168 at 26.  This testimony, however, is not hearsay because it merely describes Ms. Meder's understanding of how Stericycle would notify another St. Margaret hospital regarding new hires—Ms. Meder does not say whether any such notification occurred.  ECF No. 136-2 at 34:23–35:3.  To the extent St. Margaret objects to this testimony as speculative because it lacks foundation, the Court disagrees—given her role as a supervisor at Stericycle, Ms. Meder is competent to testify to its procedures relating to work assignments.

Next, St. Margaret objects to Ms. Meder's testimony at page 37:2–17, where she testified to her understanding that another St. Margaret hospital did not use C. Diff. based on a conversation she had with John Appeldorn, another Stericycle employee.  *See* ECF No. 168 at 26.  However, the Court agrees with Plaintiffs that they may introduce this testimony for a non-hearsay purpose— to establish Ms. Meder's knowledge and understanding regarding the use of C. Diff. at the facility. As to St. Margaret's objection that the testimony is speculative because it lacks a proper foundation, in context it is clear that Ms. Meder was not speculating as to the identity of the speaker or the contents of the statement.

In sum, Ms. Frobe may not testify that coworkers told her that St. Margaret was trying to "kill" her or that a doctor told her to wear a "mask with a fan or something in it."  The Court will not, at this time, preclude Ms. Frobe's testimony regarding Mr. Hastings' telephone call with Ms. Meder.  Finally, the Court will not exclude Ms. Meder's deposition designations.

**VII.    The Court Will Grant in Part and Deny in Part Plaintiffs' Motion to Exclude Certain Witnesses (ECF No. 129)**

Plaintiffs move to prevent St. Margaret from calling three witnesses at trial:  Michele Slinkard, Ashley Ayers, and Deborah Curry.  ECF No. 129 at 1.[9]  As to Ms. Slinkard, Plaintiffs object to her testimony as irrelevant and under Rule 403.  As to the other two, Plaintiffs argue that they should not be allowed to testify because they were not identified in St. Margaret's disclosures, would testify to matters covered by St. Margaret's corporate designees, and are cumulative of other witnesses.  The Court will deny the Motion as to Ms. Slinkard and grant the Motion as to Ms. Ayers and Ms. Curry.

Beginning with Ms. Slinkard, St. Margaret may call her at trial.  Plaintiffs' argument is that Ms. Slinkard should not be allowed to testify because she will testify about the CIH report (discussed above regarding Plaintiffs' *Daubert* motion), which they say is irrelevant and unfairly prejudicial.  But the CIH report is plainly relevant because it tends to show that the use of C. Diff. at St. Margaret did not result in high concentrations of C. Diff. in the air, which informs the reasonableness of potential accommodations, among other things.  Nor is there a risk of unfair prejudice.  Plaintiffs complain that the jury might be misled by the report and believe that the circumstances of the testing set forth in the report mirror the exact circumstances of the Plaintiffs' employment, but that concern can be addressed through appropriate cross examination.

Turning to Ms. Ayers and Ms. Curry, the Court will preclude their testimony due to St. Margaret's failure to disclose those witnesses during discovery.  Under Federal Rule of Civil Procedure 26(a)(1)(A), "a party must, without awaiting a discovery request, provide to the other parties . . . the name . . . of each individual likely to have discoverable information . . . that the

---

[9] In the same Motion, Plaintiffs also sought to preclude the testimony of Jeffrey Swaney, and Jacquelyn Demianczyck. St. Margaret, however, represented at the Final Pretrial Conference that it would not call Mr. Swaney or Ms. Demianczyck, mooting the Motion as to those two witnesses.

disclosing party may use to support its claim or defenses, unless the use would be solely for impeachment." A party who fails to identify a witness or provide information as required under Rule 26 "is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). "The burden of proving substantial justification or harmlessness lies with the non-producing party." *Frederick v. Hanna*, Civil Action No. 05-514, 2007 WL 853480 at *4, at *13 (W.D. Pa. Mar. 16, 2007) (Ambrose, then-C.J.). "Substantial justification exists if there is a genuine dispute about whether the party was required to make the disclosure. And a failure to disclose is harmless if it involves an honest mistake, coupled with sufficient knowledge by the other party of the material that has not been produced." *Kacian v. Brennan*, No. 3:12-CV-102, 2017 WL 933142, at *4 (W.D. Pa. Mar. 8, 2017) (internal citations and quotations omitted). Before excluding evidence as a sanction, district courts must consider five factors:

> (1) the prejudice or surprise in fact of the party against whom the excluded witnesses would have testified or the excluded evidence would have been offered; (2) the ability of that party to cure the prejudice; (3) the extent to which allowing such witnesses or evidence would disrupt the orderly and efficient trial of the case or of other cases in the court; (4) any bad faith or willfulness in failing to comply with the court's order; and (5) the importance of the excluded evidence.

*ZF Meritor, LLC v. Eaton Corp.*, 696 F.3d 254, 298 (3d Cir. 2012) (cleaned up); *Nicholas v. Pennsylvania State Univ.*, 227 F.3d 133, 148 (3d Cir. 2000). Ultimately, the Court has broad discretion to determine whether to exclude certain testimony for a discovery violation. *Reinig v. RBS Citizens, N.A.*, No. 2:15-CV-01541-CCW, 2021 WL 5770202, at *3 (W.D. Pa. Dec. 3, 2021).

Here, St. Margaret has not met its burden to show harmlessness and has not argued substantial justification. St. Margaret's harmlessness argument is essentially that Ms. Ayers and Ms. Curry will testify regarding subjects covered by St. Margaret's corporate designees in Rule 30(b)(6) depositions and that Plaintiffs may use that deposition testimony to impeach Ms. Ayers

and Ms. Curry.[10]  But that does not render the new testimony harmless in light of St. Margaret's suggestion in its submissions and argument that Ms. Ayers and Ms. Curry are more knowledgeable on that subject matter than its Rule 30(b)(6) designees.  Thus, Plaintiffs do not know how Ms. Ayers' and Ms. Curry's testimony will be different and, more importantly, have been deprived an opportunity to conduct discovery specific to those witnesses.  In terms of the factors articulated in *ZF Meritor*, there is a significant risk of prejudice and surprise stemming from St. Margaret's failure to disclose the new witnesses, which cannot practically be cured with trial less than one week away.  The fact that Ms. Ayers' and Ms. Curry's testimony is minimally important to St. Margaret's case—its witness list reveals other witnesses who intend to testify to the same general subject matter—likewise counsels in favor of precluding their testimony.[11]  *See ZF Meritor*, 696 F.3d at 299 (exclusion of evidence more appropriate where it is unlikely to change the outcome of the case).  Thus, although allowing Ms. Ayers and Ms. Curry to testify would not significantly disrupt the case and although St. Margaret has not acted in bad faith, the Court concludes that, on balance, it is appropriate to preclude their testimony.

## VIII.   Conclusion

For the foregoing reasons, it is **HEREBY ORDERED** that:

---

[10] Contrary to Plaintiffs' argument, the fact that these witnesses would cover subject-matter within the scope of St. Margaret's Rule 30(b)(6) testimony does not alone render the proposed witnesses' testimony objectionable, because a corporate entity may supplement or even contradict its deposition Rule 30(b)(6) testimony at trial.  *See Ozburn-Hessey Logistics, LLC v. 721 Logistics, LLC*, 40 F. Supp. 3d 437, 451 (E.D. Pa. 2014) (collecting cases).  Plaintiffs are free, of course, to use that deposition testimony for impeachment purposes.  *See id.*

[11] St. Margaret's suggestion that its corporate designees may not testify to matters outside their personal knowledge at trial is belied by the cases St. Margaret itself relies on.  It cites *TIG Ins. Co. v. Tyco Int'l Ltd.*, 919 F. Supp. 2d 439, 454 (M.D. Pa. 2013), and *Union Pump Co. v. Centrifugal Tech. Inc.*, 404 F. App'x 899, 907–08 (5th Cir. 2010), both of which acknowledge that a Rule 30(b)(6) designee may testify at trial to matters outside their personal knowledge except "to the extent that information [is] hearsay not falling within one of the authorized exceptions."  Both of these cases cite to *Brazos River Auth. v. GE Ionics, Inc.*, 469 F.3d 416, 434 (5th Cir. 2006), which makes the point clearer: "[I]f a rule 30(b)(6) witness is made available at trial, he should be allowed to testify as to matters within corporate knowledge to which he testified in deposition."  Although *Brazos River* likewise identifies an exception for inadmissible hearsay, St. Margaret has not identified what testimony of its corporate designees is inadmissible hearsay such that it could not be presented at trial.

1. Plaintiffs' Motion in Limine #1 – To Limit the Testimony and Report of Jason T. Capriotti, CIH, CSP, ECF No. 117, is **DENIED**.

2. Plaintiffs' Motion in Limine #2 – To Preclude Any Evidence Regarding the Outcomes of Plaintiffs' Workers' Compensation Claims, ECF No. 119, is **GRANTED IN PART** and **DENIED in PART**.  St. Margaret may present evidence to establish the fact that Ms. Wiest's termination was amended to a resignation pursuant to a negotiated resolution, but may not present the settlement agreement itself.  The parties shall meet and confer regarding (1) the evidence St. Margaret intends to use to establish that fact and (2) the presentation of evidence regarding the amounts of workers' compensation received.  After meeting and conferring, and no later than **NOON** on **June 2, 2023**, the parties shall file a joint status report setting forth any stipulations and remaining objections regarding this subject matter.

3. Plaintiffs' Motion in Limine #3 – To Preclude Any Evidence Regarding Receipt of Unemployment Compensation Benefits, ECF No. 121, is **DENIED AS PREMATURE**.

4. Plaintiffs' Motion in Limine #4 – To Preclude Evidence on the Basis of Relevance and Prejudice, ECF No. 123, is **DENIED**.

5. Plaintiffs' Motion in Limine #5 – To Preclude Evidence of the Outcomes of Plaintiffs' Requests for Leave, ECF No. 125, is **DENIED**.

6. Plaintiffs' Motion in Limine #6 – To Preclude Evidence Regarding the OSHA Retaliation Complaints, ECF No. 127, is **GRANTED AS UNOPPOSED**.  The parties may not present evidence of Plaintiffs' OSHA retaliation complaints.

7. Plaintiffs' Motion in Limine #7 – To Preclude Testimony of Defendant's Witnesses, ECF No. 129, is **GRANTED IN PART** and **DENIED IN PART**.  St. Margaret may not present Ms. Ayers or Ms. Curry as witnesses at trial.

8. Defendant's Motion to Exclude the Report, Opinions, and Testimony of Dr. Ernest Chiodo, ECF No. 133, is **GRANTED IN PART** and **DENIED IN PART**.  Dr. Chiodo may not testify that certain accommodations are "reasonable accommodations" and may not testify regarding a change in ventilation as a potential accommodation.

9. Defendant's Motion to Exclude Hearsay and Speculative Statements, ECF No. 135, is **GRANTED IN PART** and **DENIED IN PART**.  Plaintiffs may not elicit testimony from Ms. Frobe that (1) two colleagues told her that St. Margaret was "trying to kill" Ms. Frobe or (2) a doctor suggested that she wear "some type of mask that has a fan or something in it."

10. Defendant's Motion to Exclude Evidence Concerning Plaintiff Dawn Frobe's Husband's Potential Foreclosure and Bankruptcy, ECF No. 137, is **GRANTED IN PART** and **DENIED IN PART**.  Plaintiffs may not present evidence regarding Mr. Frobe's bankruptcy but may present evidence regarding the potential foreclosure on the Frobes' home.

11. Defendant's Motion to Exclude Evidence Related to OSHA Complaints and Actions, ECF No. 139, is **GRANTED**.  The parties may not present evidence of OSHA complaints, St. Margaret's responses, OSHA's citation, and the informal settlement agreement of that citation.

12. Defendant's Motion to Exclude Evidence and Argument Regarding Safety Complaints, ECF No. 141, is **GRANTED**.  The parties may not present evidence of OSHA complaints,

St. Margaret's responses, OSHA's citation, and the informal settlement agreement of that citation. The Court will consider objections to evidence regarding non-OSHA safety complaints if and when an objection to particular evidence is raised.

DATED this 31st day of May, 2023.

BY THE COURT:

/s/ Christy Criswell Wiegand
CHRISTY CRISWELL WIEGAND
United States District Judge

cc (via ECF email notification):

All Counsel of Record